NATHANIEL B. MANSFIELD, in equity, *vs.* GARDINER SHERMAN.

Hancock.   Opinion March 6, 1889.

*Equity.   Specific performance.   Mistake.*

A bill in equity for a decree for specific performance of a contract, for the sale of real estate, is addressed to the sound discretion of the court.

Where a vendor of real estate made a material mistake, as to the extent and boundaries of one of the lots bargained, the vendee cannot, upon being apprised of the vendor's mistake, insist upon specific performance.

Equity will not assist one party to gain an advantage from the mistake of another party, but will leave him to his remedies at law.

ON REPORT.   Bill in equity, for specific performance, heard on bill, answer and proofs.

The facts appear in the opinion.

*Wiswell, King and Peters,* for plaintiff.

Contract by correspondence, completed. *Bird* v. *Munroe,* 66 Maine, 337, 345, 346; *Alger* v. *Scoville,* 1 Gray, 391; *Allen* v. *Bennet,* 3 Taunt. 169; 1 Benj. Sales, § 220, and notes. Imma-

terial, that letters were addressed to broker, instead of plaintiff. *Bird* v. *Munroe, supra,* and cases cited; 1, Benj. Sales, pp. 245, 246, and note; Brown St. Frauds, § 346; *Townsend* v. *Hargraves,* 118 Mass. 325. Verbal acceptance of Wood, and his parol agency, sufficient. *Doty* v. *Wilder,* 15 Ill. 407; (60 Am. Dec. 576.) *Johnson* v. *Dodge,* 17 Ill. 433; *McConnell* v. *Brillhart,* Id. 354 (Am. Dec. 661); 1 Benj. Sales, p. 252, (note 36 by Corbin). Parol acceptance of written proposal, sufficient to bind signer. 1 Benj. Sales, § 254, and note. *Williams* v. *Robinson,* 73 Maine, 186; *Bird* v. *Munroe, supra,* 346. Wood's letter was an acceptance, as soon as mailed. 1 Benj. Sales, p. 64, § 44, and notes. Acceptance unconditional. "As he said one-half cash, would like to have you make it so if you can," was the expression of a hope, or wish, and did not vary terms of contract. *Phillips* v. *Moor,* 71 Maine, 78, 79; 1 Benj. Sales, p. 55, and note.

No mutual mistake. If one of quantity, on part of defendant, will not prevent specific performance. *Davis* v. *Parker,* 14 Allen, 94.

*Deasy and Higgins,* for defendant.

Before trade was consummated, defendant discovered mistake, and notified plaintiff. No contract made enforceable in equity, and no sufficient memorandum. Defendant intended to sell one building lot, and lot 12, on plan includes two. Mistake on one side, though not sufficient to reform may be for rescinding, or refusing specific performance. *Young* v. *McGown,* 62 Maine, 56, 61; *Fahlberg* v. *Cosine,* (5 N. E. Rep. 23); *Lawrence* v. *Staigg,* 8 R. I. 256; S. C. 10 Id. 581; *Harris* v. *Pepperell,* L. R. 5 Eq. 1; *Garrad* v. *Frankel,* 30 Beav. 445; *Wright* v. *Goff,* 22 Id. 207; *Spurr* v. *Benedict,* 99 Mass. 463, 465; *Kyle* v. *Kavanagh,* 103 Mass. 356, 359. Where there is mistake as to what was sold, equity will not interfere in favor of either party. 1 Sugden's Vendors, 7th Am. Ed. 279. Mistake may be proved in defense, but not to reform. Sugden's Vendors, 8th Am. Ed. 160, and cases cited.

Court may refuse to reform or rescind, leaving parties to their legal remedies. *Osgood* v. *Franklin,* 2 Johns. Ch. 23; *Mortlock* v. *Buller,* 10 Ves. 292; *Mason* v. *Armitage,* 13 Id. 25; *Hepburn*

v. *Dunlop*, 10 Wheat. 179, 198. Contract not enforceable, in cases of doubt. *Clowes* v. *Higginson*, 1 Ves. & B. 524, 533. No laches: *Cook* v. *Clayworth*, 18 Ves. 12; *Ball* v. *Storie*, 1 Sim. & Stu. 210; *Malins* v. *Freeman*, 2 Ke. 25; *Coles* v. *Bowne*, 10 Paige Ch. 527; Pom. Sp. Per. § 252.

Brokers exceeded their authority, hence no enforceable contract. *Loudon Soc.* v. *Bank*, 36 Pa. St. 498; *Carmichael* v. *Buch*, 10 Rich. (So. Car.) 332; *Persley* v. *Morrison*, 7 Ind. 356; *Rossiter* v. *Rossiter*, 8 Wend. 494; *Reese* v. *Medlock*, 27 Tex. 120; *Craighead* v. *Peterson*, 72 N. Y. 279; *Martin* v. *Farnsworth*, 59 Id. 555.

Dealer must inquire, where principal has not held his agent out as having general authority. *Reitz* v. *Martin*, 12 Ind. 308. No mutually enforceable contract. *Snell* v. *Mitchell*, 65 Maine, 48; *Moore* v. *Fitz Randolph*, 6 Leigh, 175; Pom. Eq. § 1405, and cases cited; Adams Eq. §§ 77, 82; *Butman* v. *Porter*, 100 Mass. 337; *Sullings* v. *Sullings*, 9 Allen, 234.

Verbal promise to buy not such a valuable consideration as required in equity. Bispham Eq. 372; Pom. Eq. 1293; Adams Eq. 77; *Stone* v. *Hackett*, 12 Gray, 227; *Wason* v. *Colburn*, 99 Mass. 342.

Letters previous to May 6, may identify the property, but not admissible to prove contract, because defendant revoked broker's authority and withdrew his lots from market. His letter of May 25, not a ratification of previous contract, but authority to make a new and different contract.

EMERY, J. This is a bill in equity, in which the court is asked to decree the specific performance of a contract for the conveyance of two lots of land, as marked upon a plan.

Such an application is addressed to the sound discretion of the court. Not every party, who would be entitled as of right to damages for the breach of a contract, is entitled to a decree for its specific performance. Before granting such a decree, the court should be satisfied not only of the existence of a valid contract, free from fraud, and enforceable in law, but also of its fairness and its harmony with equity and good conscience. However strong, clear and emphatic the language of the contract, however plain the right at law, if a specific performance would, for any

reason, cause a result, harsh, inequitable or contrary to good conscience, the court should refuse such a decree and leave the parties to their remedies at law. In an equity proceeding, the complainant must do equity and can obtain only equity. *Mort-lock* v. *Buller*, 10 Ves. 305; *Willard* v. *Taylor*, 8 Wall. 557; *Snell* v. *Mitchell*, 65 Maine, 48.

In this case the answer sets up the defense among others, that the respondent made his offer to sell the land, and named the price under a material mistake, as to the extent and boundaries of one of the lots,—that he did not understand that the lots included a certain valuable building site, which he never intended to sell at such a price—that by reason of such mistake, he named an inadequate price for the lot and that for the complainant to seek to compel him to convey at that price is inequitable, and is taking an unfair advantage of his mistake.

The facts material to this issue seem to be these: Mr. Sherman, the respondent, living in New York, owned a tract of land in Bar Harbor, which he had caused to be laid out into avenues and building lots, and a plan to be made by a landscape engineer. There were twelve lots, marked on the plan by numbers.

In March 1887, Mr. Mansfield, the complainant, saw these lots, and inquired of a firm of real estate brokers at Bar Harbor about lot No. 7, a small lot, at the extreme southern end of the tract. The brokers wrote to Mr. Sherman in New York, about this inquiry, and suggested that he authorize them to sell the lots. After some correspondence, Mr. Sherman sent from New York, the plan, and a list of prices for the lots, and instructions about selling, the conditions, &c. The scale of prices on this list ranged all the way from $1500 for lot 7, to $10,000 for lot 10. The price of lot No. 12, was marked $2,500,—the lowest but two on the list. Lot No. 1, was reserved and the aggregate price of the eleven lots was $44,000. Mr. Mansfield, after learning the prices and examining the lots, not only said he would take lot No. 7, but said he would take lot No. 12, nearly at the other extremity of the tract, at the price named. Mr. Sherman, on being written to, sent to the brokers May 25, an offer to sell both the lots at the price of $4,000. He subsequently came to Bar Harbor early

in June, (the 3d or 4th,) and went upon the land with the plan, and immediately afterward informed the brokers that he had made a great mistake as to lot No. 12—that he found it contained a valuable building site, which he supposed was not included, and which he had not intended to bargain at such a price,—and that therefore he could not convey it.

The testimony of all the witnesses, as to the relative value of the lots, is to the effect, that lot 12, was one of the most valuable lots in the tract, if, indeed, it was not the most valuable.  The real estate agents (called by the complainant) so testified, and also that its value was nearly double that of lot No. 11, marked at $6,000.  This evidence was not contradicted, and shows that from some cause, Mr. Sherman named a very inadequate price for lot 12, in comparison with the other lots.  If this was owing to an error in judgment, or a mistaken opinion about the relative values, perhaps the court should not consider it.  Mr. Sherman, however, testifies that it was owing to a mistake in material matters of fact; and not to a mistake in judgment.  He says there are two building sites within the territory of what is now lot 12, and that he directed the engineer to make two lots of what was lot 12, so as to include in lot 12, as left, only the more northern and cheaper building site, and exclude the southern and more valuable site,—that he supposed that his directions were followed, and that he made the offer to sell lot 12, for $2,500, under the belief that it did not include the more valuable of the two sites.  The engineer corroborates Mr. Sherman.  He testifies that he was directed to make such division, but afterward thought it best not to do so, and so put both sites in one lot.  It does not appear, that Mr. Sherman was ever informed of this departure from his instructions.

It is urged that this story of Mr. Sherman's is not natural, and that he should have seen from the plan itself, when sent him by the engineer, that lot 12, included more than one site, or at least, that it had not been divided.  Mr. Sherman may have been careless in the matter, and perhaps he should have seen the departure from his instructions, but we can understand how, under the circumstances, he might overlook it and retain the belief that his instructions had been followed.  The story explains an evident

disparity in price. It is uncontradicted, and it seems to us probable, that Mr. Sherman did make the offer under a mistake of fact, as he states.

It should be remembered here, that Mr. Mansfield, at first, only inquired about lot No. 7,—the smallest lot, and situated at the extreme southern end of the tract. It was not till after he saw the list of prices, that he desired to include in his purchase lot 12, near the extreme northern end of the tract. The two lots are far apart, and have no possible connection with each other. It seems probable that Mr. Mansfield saw the disproportion of price as to lot 12, and for that reason endeavored to secure it.

Would it be equitable, and in accord with good conscience to compel a conveyance under such circumstances? Do equity and good conscience require that Mr. Mansfield should gain and Mr. Sherman lose by this mistake? The equitable principle involved can perhaps be more vividly illustrated by stating a case similar in kind, but stronger in degree. Suppose Mr. Sherman had built a costly residence on lot 12, and yet, living in New York, he in some way had the impression, that the structures were on lot 11, and that lot 12, was an unimproved lot, and under such actual impression had bargained lot 12, at a correspondingly low price to one who knew that the buildings were on lot 12. Would it be fair, or honorable in the vendee, after being apprised of the vendor's mistake, to insist on a conveyance at such an inadequate price? Would not such a vendee justly be thought a hard, rigorous man, and the rule of law that sustained him, justly be thought a harsh, inequitable rule?

Mr. Sherman living at a distance, remembering the particular building site, which he thought so valuable, had somehow acquired the erroneous impression, that it was not included in lot No. 12. It was a mistake of fact, and about an important and controlling fact. Mr. Mansfield must have been aware from the evident disparity that there was very likely some mistake about it.

Of course, if there was a valid contract, Mr. Sherman should answer in damages for all the loss his mistake and refusal to convey have occasioned Mr. Mansfield. The court when appealed to in an action at law, can only consider whether there was a

valid contract and a breach. The mere mistake of one party however great, will not excuse him from making full compensation. When however application is made to the court, not to determine and enforce legal rights, but "to do equity" between the parties, the court will be careful to do only equity, and will not aid one party to take advantage of the mistake of the other party. We think in this case, we should decline to decree a specific performance, and should leave the parties to their rights and remedies at law. It does not appear, that pecuniary damages for the breach, would not fully compensate Mr. Mansfield for all losses he has sustained in the matter.

A few cases will illustrate the principle, that a mistake of one party will justify a court of equity in refusing to decree a specific performance against him. In *Leslie* v. *Tompson*, 9 Hare, 268, an estate was put up for sale in several lots. The vendor made a mistake in computing the amount of land in four of the lots. These four lots were sold to one purchaser, and after the sale, were found to contain more land than was stated at the sale. It was held that the vendor was entitled to increased compensation, although them is takewas his. In *Alvanley* v. *Kinnaird*, 2 Macn. & G. 1, land was sold under an order of court, with this description, "The manor of *Bredbury cum Goite*, with the court baron to the same belonging, and all and every the rights, royalties, liberties, privileges and advantages." The purchaser bought in good faith under this description. The vendors however did not intend to include the mines and minerals under any lands within the manor, and it was their mistake, that the exception was not expressed in the order of sale. Cottenham, Ld. Ch., said, that in such a case specific performance would not be enforced against the vendors. In *Malins* v. *Freeman*, 2 Keen, 25, the respondent bought at an auction sale, "Lot No. 3," under the mistaken impression that it was the "Davies Lot." The mistake was wholly his, as the auctioneer distinctly and correctly described "Lot No. 3." The court declined to decree a specific performance against the purchaser, and left the parties to their remedies at law. In *Webster* v. *Cecil*, 30 Beav. 62, the respondent owning several parcels of land, had made a memorandum of the price of each,

which footed up £2100.  After some negotiations with the complainant about a sale, he wrote to him offering the whole estate for £1100.  The complainant in writing formerly accepted the offer.  The respondent immediately afterward discovered his error, and at once notified the complainant, who was innocent of any mistake.  Sir John Romilly, M. R., said the court would not decree a specific performance, and compel a person to convey his property for much less than its real value, and for £1000 less than he intended.  In *Baxendale* v. *Seale*, 19 Beav. 601, the land bargained was described to be "the manor of Stoke Fleming,   *   *   *   *   embracing nearly the whole parish of Stoke Fleming," with certain immaterial exceptions.  The vendor supposed that the manor did not include any lands beyond the parish, but after the sale, it was found that the manor did include lands outside the parish.  The purchaser, innocent of any mistake, insisted on specific performance but the M. R., Sir John Romilly, refused to decree it.  In *Buckhalter* v. *Jones*, 32 Kansas 5, Buckhalter wrote to Jones, offering him $2000, for a parcel of land.  Jones wrote in reply, "we will accept your offer."  It appeared that, although the offer was in fact, only $2000, yet Jones somehow understood it to be $2100, and he refused to convey for less.  The court declared the contract to be binding at law, but on account of the mistake, refused a decree for specific performance, and left the parties to their remedies at law.

In this case, were it clear, that there is a contract binding at law, we should think it equitable for the respondent to pay the costs of this proceeding, which would then be defeated by his own mistake; but as there is some doubt about the validity of the alleged contract, we think it more equitable to leave each party to bear his own costs.

*Bill dismissed.*

PETERS, C. J., WALTON, DANFORTH, VIRGIN and HASKELL, JJ., concurred.