C. W. Nelson, Appellee, v. S. R. Robinson et al., Appellants.

**LANDLORD AND TENANT:** Option to Purchase—Special Assess-
1　ments. A lessee in a long-time lease, who acquires an option
to purchase, and thereby to terminate the lease, must, on exer-
cising the option, assume the payment of special assessments
for improvements which were *not* within the contemplation of
the parties when the lease and option contract were entered
into.

**DEEDS:** Assumption of Unpaid Special Assessments. One who has
2　given the tenant the option to purchase the leased premises at
a specified time during the term of the lease, is under no ob-
ligation, on the exercise of the option, to pay special assess-
ments for improvements which were *not* within the contem-
plation of the parties when the option was granted.

**MUNICIPAL CORPORATIONS:** Special Assessments—Presumption
3　in re Enhancement of Value. Principle recognized that a
special assessment is presumed to enhance the value of the
property to the extent of the legal assessment.

**SPECIFIC PERFORMANCE:** Noncontemplated Special Assess-
4　ments. A written contract giving a tenant the right to pur-
chase the leased premises at a specified time during the term
will not be so specifically enforced as to require the owner of
the property to pay special assessments for improvements
which were *not* within the contemplation of the parties when
the right to purchase was granted.

*Appeal from Marshall District Court.*—James W. Willett,
Judge.

Jᴜʟʏ 6, 1920.

Rᴇʜᴇᴀʀɪɴɢ Dᴇɴɪᴇᴅ Oᴄᴛᴏʙᴇʀ 23, 1920.

Aᴄᴛɪᴏɴ in equity, brought to specifically enforce the
following provisions made in a lease between plaintiff and
defendant:

"It is further agreed that the lessee shall have the option and privilege of purchasing said property at the price of $8,000, July 1, 1918, at which time, should he exercise the option to purchase, the lease shall terminate."

It appears that, since the lease was executed, the property has been improved by the city, by the putting in of paving, sidewalks, and sewers. The court decreed plaintiff entitled to the property, free and clear of liens created by special assessments made for these improvements, upon the payment of the price stipulated in the contract. Opinion states the facts.—*Reversed.*

*Rayburn & Lyman,* for appellants.

*E. N. Farber,* for appellee.

GAYNOR, J.—This is an action for a decree of specific performance of a written contract to convey land. The facts upon which the right to a specific performance is based, are substantially as follows:

1. LANDLORD AND TENANT: option to purchase: special assessments.
On and prior to the 22d day of May, 1908, one Carney, of Cook County, Illinois, was the owner of Lots 7, 8, 9, 11, and 12 in Block 8 in Anson's First Addition to the town of Marshalltown, Iowa. On that day, he entered into a written contract with one J. H. Mineah, in which he agreed to sell and convey to him the lots aforesaid, at the agreed price of $6,000. In this contract was the following stipulation:

"It is further understood and agreed that the party of the second part [Mineah] shall pay all taxes and assessments now due or *which may hereafter be assessed against the property,* with the further statement that the premises are free and clear from all liens, incumbrances except the taxes for 1907."

This contract was assigned in writing to the defendant Robinson on the 22d day of March, 1912, for a consideration of $5,500. This was the condition of defendant's title at

the time the contract sought to be enforced in this action was entered into. The contract here sought to be enforced was the usual form of lease. In it Robinson leased to plaintiff the premises in question for a term of 10 years, to wit, from the 1st day of July, 1913, until noon of the 1st day of July, 1923, at a monthly rental of $75 per month, to be paid in advance. This lease contained this provision:

"Lessee [being the plaintiff] shall have the option and privilege of purchasing said lots at the price of $8,000 on the 1st day of July, 1918, at which time should he exercise the option to purchase the lease shall terminate."

The plaintiff entered into the possession of the premises, and made valuable improvements upon the same, and paid all the rents required of him to be paid under said lease until the 1st day of July, 1918. On that day, he notified the defendant in writing that he had elected to accept and exercise the option and privilege given him in the lease, and offered and tendered to the defendant the $8,000 stipulated therein. This was refused by the defendant, and this action is brought to require him to specifically perform, and convey the land to the plaintiff for the said sum of $8,000.

After the making of said lease, and on the 23d day of September, 1915, Carney conveyed to the defendant the property in question by warranty deed, the consideration named being $6,000. This was made in fulfillment of the contract hereinbefore referred to, entered into between Carney and Mineah, and assigned to the defendant. In this deed it was provided "that the same is sold subject to all taxes and assessments which may be a lien against the property," all of which the purchaser, Robinson, assumed, and agreed to pay. It appears that, between the making of said lease and acceptance of the option, street pavements were put in, sewers constructed, and sidewalks built by the city of Marshalltown on streets adjoining these lots, and the lots were duly assessed for benefits on account thereof made, as follows: October 26, 1916, for the sewer, approximately $565, part of which has been paid by Robinson since that date; for paving on Railroad Street adjoin-

ing the lots, approximately $860; for paving on First Street adjoining said lots, against Lots 7, 8, and 9, each $194.69, part of which has been paid; for sidewalks in front of Lots 9 and 12, on Lot 9, $103.07, and on Lot 12, $151.12.

On the trial of the case, it was practically conceded that plaintiff was entitled to a specific performance of his contract, and was entitled to have conveyed to him the title to the lots in controversy. The only question now around which the controversy centers is the duty of the plaintiff to accept title subject to *existing liens* for special assessments so made. On the trial, the defendant tendered the plaintiff a good and sufficient warranty deed, subject only to the *unpaid special assessments*. This deed was refused by the plaintiff. The only question, therefore, which this case calls upon us to determine is whether or not this deed is a sufficient compliance with the covenants of the defendant under his lease, and whether it should not have ended the controversy between the parties. If the tender is all that plaintiff is entitled to, under the facts in this case, then the defendant has tendered performance of all the obligations he assumed in the lease, and the case should terminate here. The evidence tends to show—and we think does show—that the actual value of the property, at the time the lease was entered into, was about $5,500; that the property was practically unimproved; that, since then, the plaintiff has put valuable improvements upon the land; that he placed these improvements upon the property in reliance upon the optional agreement given in the lease; that, at the time the lease was entered into, the reasonable rental value of the property did not exceed $25 a month; that the plaintiff agreed to and accepted the lease because of this optional provision that he might purchase it at a stipulated time at a stipulated price. This lease extended over 10 years. Marshalltown was a city of about 15,000, surrounded by a fertile and productive country. No doubt the parties had in mind, at the time, that, at the expiration of the lease, whether it

*2. Deeds: assumption of unpaid special assessments.*

terminated upon acceptance of the option or whether it terminated at the expiration of the 10 years provided in the lease, the rental value would be far in excess of the then rental value. No doubt the agreement to pay $8,000 was made in anticipation of the development and building up of the city, and especially of that portion of the city, and the rise in value of the lease on account thereof. The plaintiff stipulated with the defendant to pay him from $2,000 to $2,500 more, on the 1st day of July, 1918, than the property was actually worth at the time the lease was entered into. At the time the lease was entered into, many of the streets of Marshalltown had been paved, and paving had been laid on Center Street, adjoining the property in controversy on the west. There is a reason for believing that the parties did not contemplate, at the time, that the improvements in controversy would be made during the life of the option. The necessity for this paving seems to have come out of conditions that came into existence after the lease was made. The same may be said of the storm sewer and of the sidewalks. The laying of this paving, the building of these sidewalks, and the construction of the sewer, were not matters over which the parties to this contract had any control. Neither can be held to have anticipated that these improvements would be made within the time limited for acceptance of the option. The necessity for these improvements and the time when they should be made, rested in the sound discretion of the city, to be exercised according to the public needs, as the years developed them. The improvements in controversy here were directed by the city council, and assessments were made according to special benefits assumed to have been conferred upon this property by their action. The improvements, so far as the parties to this suit were concerned, were compulsory; and we cannot say from this record, or from anything that this record discloses, that these improvements were anticipated, at the time the agreement to convey was entered into. Of course, in a general way, we must recognize the fact that the citizens of these grow-

ing cities in Iowa, owning property within their limits, do expect and anticipate that public improvements of the nature here under consideration will be made, in the interest of the public, by the public authorities of the city at some time. But the character of the property and its location, the character and size of the town at the time, the previous improvements and their character, must always be considered in determining whether or not parties contracting for the sale of property abutting upon the streets anticipated and had in mind specific improvements of that character, involving the property subject to the contract. The theory of assessments for special benefits is that the property itself is benefited to the extent of the improve-ment, but not to exceed 25 per cent of the actual value of the property to be affected. At the time this contract was entered into, the property was unimproved. It was, no doubt, desirable property for the purposes to which plain-tiff desired to devote it. It was located near railway tracks. If these improvements had not been made by the city, the plaintiff would be entitled to a decree of specific performance, upon the payment of the $8,000 stipulated in the lease, even though, from natural causes, the property became more valuable. By the action of the city in plac-ing these improvements, we must assume that the property had been benefited, to some extent. The improvements must be paid for, or the property confiscated to the payment. The proportionate cost of the paving, according to benefits conferred, must be borne by someone, and primarily is charged to the land, but is actually borne by the owners of the land. The work for which these special assessments were made was a permanent improvement to this land, which now the plaintiff seeks to take under his contract at a price stipulated before the improvements were made; and we must assume that the improvements have added largely to the value of the land. The equities of the parties are before the court for adjustment; and though, or-

3. MUNICIPAL CORPORA-TIONS: special assess-ments: presumption *in re* en-hancement of value.

dinarily, courts of equity follow the contract, and will specifically enforce the same, yet if, by reason of matters over which neither party has control, it becomes unjust or inequitable to enforce the same, they may refuse to do so. We do not mean to say by this that courts of equity will refuse to enforce a contract because, in their judgment, the contract is improvident, or because one party or the other had made a bad bargain. This is not sufficient to justify refusal to specifically perform. Courts of equity will not undertake to make contracts for parties or to revise them. Equity recognizes, as the law does, that parties are entitled to the benefits of their contracts and their bargains. But bad bargains will be often interfered with by courts when there is proof of fraud or deceit, or the taking of undue advantage of another because of infirmities. The refusal to enforce a contract specifically is not based, then, upon the mere ground that the bargain is improvident or unfair, but upon the fact that other influences have worked their way into the making of the contract, which show that one or the other has been circumvented into the making of the contract, and which render it inequitable now to compel him to abide by the terms, and perform as stipulated. Here we have no evidence of any unfairness; the parties dealt at arms' length; the property was there, and known to each party; each was a man of large business experience; and each was competent to take care of himself. However this may be, this fact is true: that there were only five years to expire between the making of the lease and the right to exercise the option. We cannot say, as a matter of fact or of law, that both parties anticipated and foresaw that, within that time, these valuable improvements would be made by the city, without the consent of either party to the contract, which improvements would enhance the value of the property as a commercial entity.

. We do not deem it of any importance in the disposition of this case that Robinson made no objection to the improvements. It is not shown that there was any ground

for objection. Nor do we deem it in any way a controlling fact that he accepted the benefit of the seven-year provision for the payment of the assessment. At that time, the then owner of the land was called upon to act. The land was primarily liable for the payment of the assessment. The seven-year waiver added nothing to the burden, but afforded protection against immediate confiscation.

It is recognized that equity, when called upon to specifically enforce a contract, looks keenly to see whether or not, under all the circumstances disclosed in the record, it would be just and equitable to require the parties to specifically perform. True that, in most cases which have come to the courts in which specific performance is prayed and the prayer denied, there apparently existed in the contract some inequality in the very terms of the contract itself, or it was made to appear that the one seeking to avoid the performance had been circumvented in some way, so that it was apparently unjust and unfair to require the contract to be specifically performed according to its terms. A discretion, then, is lodged in the court of equity to refuse specific performance, and leave the parties to their remedy at law for damages as for a breach. It has been held that this same discretion exists when the enforcement of the contract has become inequitable, through subsequent events or collateral circumstances. These are but expressions of a general rule applied by courts of equity, in an effort to work out substantial justice between the parties. In some cases, courts of equity have refused specific performance of a legal and valid contract, because, as it was said, it would be attended with great loss and hardship to one of the parties. In other cases, specific performance was refused because of gross inequality and improvidence in the contract itself. In other cases, it was held that a court of equity may refuse specific performance "notwithstanding contractual obligation, if there be circumstances rendering it inequitable to require specific performance of it;"

4. SPECIFIC PERFORMANCE: non-contemplated special assessments.

and it was said that it was not with abstract and rigid law that equity dealt, but with principles of justice and right, which the. consciences of men must approve.    In *Mansfield v. Sherman,* 81 Me. 365 (17 Atl. 300), the court said:

"However strong, clear, and emphatic the language of the contract, however plain the right at law, if a specific performance would, for any reason, cause a result harsh, inequitable, or contrary to good conscience, the court should refuse such a decree, and leave the parties to their remedy at law."

We have nothing in this record that would justify us in saying that, when the parties entered into this lease, with this optional stipulation in it, on which the plaintiff rests· his claim to the land, either party understood or foresaw that, within the five-year limitation for acceptance, these improvements, or any improvements of a character such as those involved here, would be made, to the great advantage and improvement of the property which was the subject of the contract.    We do not think that it was in · contemplation of the parties that, so far as public improvements of this character are concerned, these improvements would be made during that period of time, and before the expiration of the option, and we do not believe that the parties, in contracting, one to buy and the other to sell, at the stipulated sum, on the date when the option should be exercised, had in contemplation that the property itself would be permanently improved or enhanced in value.

We do not feel that we can add anything to what has been heretofore said by this court on this same question in *King v. Raab,* 123 Iowa 632, and *Cornelius v. Kromminga,* 179 Iowa 712; nor do we find anything in the facts of this case that distinguishes it from the basic facts in those cases, or that would justify us in applying any other rule than that applied there to the rights of the parties litigant.    In *Cornelius v. Kromminga,* supra, this court said, referring to a state of facts very much like the ones here:

"Nothing is taken from the defendant [the purchaser]; the value of his property is not only undiminished, but it is presumably increased to the full amount of the assessment against it; and we think there is no sound principle of law or equity which will permit him to shift the natural and proper cost of this increment upon the plaintiff [the seller]."

See, also, *Larson v. Smith*, 174 Iowa 619.

We think, therefore, that the decree of the court was rightly for the plaintiff, but that the title given in fulfillment of the option should be subject to all the liens made for improvements *undischarged and existing* at the time the acceptance was made. The deed made by the defendant in tender is a waiver of any claim made for assessments heretofore paid by the defendant. The plaintiff, therefore, should take the land subject to all the *unpaid special assessments* made for paving, sidewalks, and sewers, as disclosed in this record. The case is, therefore, reversed, and decree ordered in accordance with our holding here. Plaintiff may have a decree in this court, if he so elect.—*Reversed*.

WEAVER, C. J., LADD and STEVENS, JJ., concur.