CHESTER A. DUNHAM

*vs.*

WILLIAM H. HOGAN, CLARA MAGEE,

AND

MAINE TURNPIKE AUTHORITY

York.   Opinion, January 7, 1948.

*Waterhouse, Spencer & Carroll*, for complainant.

*Simon Spill, Margaret Currie*, for respondent.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MURRAY, JJ.

MURRAY, J.   This bill in equity for specific performance of a contract for the sale of land and an assignment of a contract for the sale of gravel, came to this court on an appeal from a decree dismissing the bill.

The evidence produced by the complainant is that he and two others were riding in an automobile in the vicinity of Wells, looking for gravel pits adjacent to the new turnpike

road, with the idea of purchasing them and selling them to the Maine Turnpike Authority. The respondent was pointed out to them as the owner of such a pit. They got in touch with him, and after some hours of negotiating, entered into a written contract with him, under the terms of which he gave to the complainant an option, good for thirty days, on his farm, and in the option also agreed to assign a contract which he had made with the Maine Turnpike Authority, under the terms of which he was to receive 5c per yard for gravel sold to the Turnpike Authority from a gravel pit on the farm.

For the option he was paid $5 and was to receive $3,500 for the farm which included the gravel pit. When respondent was asked to deliver the deed and assignment he contended it was not intended by the parties that the gravel pit should be conveyed, nor was it intended that the contract with the Turnpike Authority should be assigned. The option is in evidence, and on its face at least, seems to sustain the complainant.

The evidence of the respondent is that he did sign the option and did receive the $5, but all of the talk between the parties was as to the sale of the farm. That one of the complainant's party, an older man, was to buy it for the younger man. It was distinctly understood that part of the farm, about eight acres, containing the gravel pit was not to be sold, and nothing was said about assigning the contract. The first he knew about the claim for the assignment and the gravel pit was when the complainant asked for a deed.

He testified that he paid $1,675 for the farm, and had improved it some. He said that in school he did not get into the fourth reader and went to work when he was twelve years old; he had difficulty in reading the option and could only read the headlines and pictures of a newspaper. He saw nothing in the option about the gravel so he signed it.

Two disinterested witnesses, agents of the Turnpike Authority testified that about May 17th, two weeks before re-

spondent signed the option, they made a survey of the gravel pit, and for the Turnpike Authority entered into an agreement with the respondent. Under this agreement he was to receive from the Turnpike Authority 5c a yard for gravel taken from the pit in question. They further testified that at that time they told him that under his contract he would receive at least $6,000 and probably $12,000 for gravel taken. One of them testified that the loam scraped from the top of the gravel pit amounted to 2,000 yards and loam is worth from 50c to $4 a yard, depending on its age.

Equity of course has jurisdiction in this case, but it is for the sound discretion of the court as to the exercising of it. If the exercising of it will cause a result contrary to equity, or good conscience, and the complainant has an adequate remedy at law, a decree should be refused and the parties left to the remedy at law.

On the law side of the court, the only things considered are whether there is a contract, a breach of it, and if so, damages. A mistake by one party is no defense. In equity a mistake by one party can be a reason for not taking jurisdiction. *Mansfield* v. *Sherman,* 81 Me. 365; 17 A. 300.

The court finds that the complainant has an adequate remedy at law, and the respondent did not intend to sign this option as to the gravel pit nor did he intend to sign the assignment of the Turnpike contract.

The evidence is conclusive that at least two weeks before signing the option he knew that there was at least $6,000 and probably $12,000 worth of gravel in the pit. He knew that there was loam of some value there.

The court sees nothing in the evidence which would cause respondent to think that the value had decreased between that time and the time of signing of the option. Respondent is a farmer and laborer, not familiar with such papers as the option which he signed. The other three are very well educated and knew what they were doing. He did not.

.  It seems incredible that he knowingly would have agreed to convey for $3,500 the farm a part of which was the gravel pit in which was gravel worth a minimum of $6,000 and probably $12,000, and the loam which he knew had some value, when he could have sold the gravel and loam and still retained his farm.

There is no explanation other than that he made a mistake; he did not realize what he was signing. A decree granting the prayer of the complainant would be inequitable and contrary to good conscience.

*The decree below dismissing
the bill is affirmed.*