Argued April 13; modified June 21, 1949

# VAN HORN CONSTRUCTION CORP. *v.*
## JOY ET UX.
207 P. 2d 157

*Nathan Weinstein*, of Portland, argued the cause and filed a brief for appellant.

*Harlow F. Lenon* argued the cause for respondents. On the brief were Lenon & Lenon, of Portland.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN and BAILEY, Justices.

BAILEY, J.

This is a suit for specific performance in which plaintiff, Van Horn Construction Corporation, seeks to require defendants, Brady S. Joy and Dorothy M. Joy, his wife, to convey to it a tract of land 168 by 170 feet upon the payment of the agreed purchase price, or, in the alternative, a parcel of land 134 by 160 feet (being Lots 23 and 24, Portview Tracts) for the price of $1,689.08, which is 75.07% of the agreed price of the larger tract of land.

The complaint is in the usual form of a suit of this kind. Attached to and made a part of it, as an exhibit, is a copy of the earnest money receipt. It is therein recited that the plaintiff agrees to purchase from the defendants, and the defendants agree to sell to the plaintiff, for the sum of $2,250, the following described real property, to wit:

"Lots 168' x 170' West of restaurant and on the No. side of Killingsworth St. Portland on bet. 75th Ave. & 74th Ave.

"Lot 24 Portview Tracts, Multnomah Co., Oregon.

"Lot 23 Portview Tracts, Multnomah Co., Oregon."

Plaintiff alleges that it has fully complied with its part of the contract, and that the defendants refuse to perform their part of the agreement. These allegations are denied by defendants.

In their first affirmative answer, defendants admit the execution of the contract hereinbefore described, and allege that Lots 23 and 24, Portview Tracts, constitute a single rectangular area measuring approximately 134 by 160 feet; that "the true measurements and area of said tract of land were unknown either to plaintiff or to defendants, that they believed said tract to be of the size expressed in said contract, and that they were mutually mistaken as to the area and measurements thereof"; and that it was the intention of the parties to the contract that Lots 23 and 24 be sold by defendants to plaintiff "according to their true and correct measurements and area". Defendants conclude this defense by asking that the contract be reformed so as to set forth the the correct intention of the parties thereto.

For a second affirmative defense they allege that at the time of the execution of the agreement here involved, Lots 23 and 24, Portview Tracts, were and now are unimproved and of the reasonable value of $2,250; that "the difference between the area of said property as erroneously described in said contract and the true area thereof does not represent a proportionate or any difference between the value of the property as attempted to be described in said contract and the actual value thereof at said time, and that plaintiff then and

there well recognized and understood said fact and the value of said property and the basis for said value as aforesaid and intended to use a portion of said property only as a site for a building and at no time intended to use more than three quarters of the actual area thereof and that the remaining area thereof was intended by him to be wholly surplus and unused area'', and that if the purchase price is reduced plaintiff would be unjustly enriched and there would be placed on defendants a serious hardship. The new matter alleged in the affirmative defense was put in issue by the reply.

The decree ordered the defendants to convey to the plaintiff title to Lots 23 and 24, Portview Tracts, and that plaintiff, concurrently therewith, pay to defendants, as the full purchase price for such property, the sum of $2,119.50, said amount being $130.50 less than the contract price for the large tract of land. From this decree plaintiff has appealed and assigns as error the failure of the court to grant to it an abatement in the price of $560.92 instead of the amount allowed.

Milton E. Van Horn, secretary of the plaintiff corporation, was looking for property to purchase in the neighborhood of the tract of land here involved. He called upon Fred L. Cofer, a real estate broker, who had his office in the vicinity of this tract of land. Cofer had no listing of this property for sale but he had heard of it from another broker. He described it to Van Horn as being a tract of land west of a restaurant on the north side of N. E. Killingsworth Street and between N. E. 74th and N. E. 75th Avenues, and as being 168 by 170 feet in size. He also informed Van Horn that the owner was asking $2,500 for the tract.

Van Horn drove from Cofer's office direct to the property, which he easily located, and inspected it for five or ten minutes from his automobile. The property suited him and he returned to Cofer's office, and made him a counter-offer of $2,000. Plaintiff and defendants finally compromised on a price of $2,250. At the time the contract was signed by Mr. Joy and Mr. Van Horn, on behalf of the corporation bearing his name, it did not contain the description of the lots in Portview Tracts. That was inserted later at the time Mrs. Joy signed, but with the knowledge and consent of Mr. Van Horn and Mr. Joy. The earnest money receipt stipulated that the Joys were to pay Cofer a commission of $112.50 for his services, which the evidence shows has been paid.

After the suit was started plaintiff and defendants entered into a stipulation whereby it was agreed that plaintiff was to pay at once to the defendants the sum of $1,689.08, and was to deposit in trust with plaintiff's attorney the sum of $560.92, said amount being the difference between $1,689.08 and the contract price of $2,250. Defendants agreed to deliver to the plaintiff a warranty deed for Lots 23 and 24, Portview Tracts, and a policy of title insurance. It was further agreed that plaintiff should have immediate possession of the property; that the suit should be prosecuted without delay and that the issues "will be restricted to those of specific performance presented to the court by the pleadings herein, said issue being only as to the duty of plaintiff to pay and the right of defendants to receive the difference between the sums of $1689.08 and $2250.00, just as if this stipulation had not been made."

At the time the contract was executed N. E. 74th Avenue did not extend north of Killingsworth Street;

N. E. 75th Avenue was not graded and there was no curbing or other designation to indicate the location of that avenue. The surface of the tract of land lying north of Killingsworth Street, and extending west from 75th Avenue for a distance of about 200 feet, was of the same general character; was approximately three feet below the level of Killingsworth Street, and was covered with grass and weeds. There were no objects visible which would indicate the boundary lines of Lots 23 and 24, or of the larger described tract. Lot 22, Portview Tracts, lies to the west of Lot 23 and located thereon is a small house with a graveled road connecting it with Killingsworth Street. Between the restaurant to the east of Lot 24 and the house on Lot 22, there is a distance in excess of 168 feet. Van Horn testified that during the negotiations with Mr. Joy he was informed by him that the property in question had a frontage of 168 feet on Killingsworth Street and a depth of 170 feet.

When the description of Lots 23 and 24, Portview Tracts, was added to the contract, plaintiff did not attempt to ascertain from the dedication plat, or elsewhere, the dimensions thereof, nor did the defendants, or anyone else, give plaintiff that information. We fail to find anything in the record disclosing when and by whom of the interested parties this knowledge was obtained. After the stipulation hereinbefore mentioned was entered into the plaintiff took possession of Lots 23 and 24, Portview Tracts, and filled the lots so they were level with the street, making them available for building sites. On Lot 24 it constructed one building 30 by 50 feet and another building 12 by 20 feet. Nothing has been built on Lot 23.

We think that the following excerpt from plaintiff's brief correctly expresses the situation of the

litigants: "There is no evidence whatever that one party sought in the transaction to take advantage of the other; the parties dealt at arm's length and there is no contention of fraud in this case, nor is there any contention of any coercion on the part of any party to the transaction."

The Circuit Court denied defendants' counterclaim for reformation of the contract between them and plaintiff. Apparently, from the observations made during the trial, the Court was of the opinion that the evidence did not show that there was a mutual mistake relative to the size of the parcel of land involved in the transaction. Since the defendants have not appealed from the adverse ruling on that matter, the question of the reformation of that contract is not before us for consideration.

■ The general rule is that where the vendor is unable to make a complete or perfect title, or where there is a deficiency in the quantity of land contracted to be sold, the vendee, "if he so elects, is not only entitled to have the contract specifically performed to the extent of the vendor's ability to comply therewith by requiring him to give the best title he can or convey what he has, but he may compel the vendor to convey his defective title or deficient estate, and at the same time have a just abatement out of the purchase price for the deficiency of title, quantity, or quality of the estate to compensate for the vendor's failure to perform the contract in full." 49 Am. Jur., Specific Performance, § 105, p. 123.

In 2 Restatement of the Law of Contracts, § 365, p. 659, it is said:

"The fact that a part of the promised performance cannot be rendered, or is otherwise such that its specific enforcement would violate some of the

rules stated in §§ 360-380, does not prevent the specific enforcement of the remainder, if in all other respects the requisites for specific enforcement of that remainder exist. Compensation for the partial breach that still remains may be awarded in the same proceeding, either as damages, restitution, or an abatement in price.  *   *   *''

Comment c, under the foregoing section, is apropos. It reads as follows:

"A vendor of land who can not perform as agreed by reason of a shortage in area or a defect in title may be decreed to transfer all that is within his power, with compensation or indemnity for the partial breach. The court has wide discretion in the character of the remedy given for the shortage or defect. It may be compensatory damages, restitution of money already paid, or a proportionate abatement of the price that has not yet been paid. The apportionment will take into consideration acreage, improvements, and relative values of the parts involved.  *   *   *''

See also to the same effect, 5 Williston on Contracts, Revised Edition, § 1436, p. 4012; Pomeroy's Specific Performance, 3rd Ed., §§ 434, 435, and 436, pp. 900-903. cf. *McCourt v. Johns,* 33 Or. 561, 53 P. 601.

Defendants admit the correctness of the foregoing rule but contend that the instant case falls within certain well-known exceptions to that rule. They argue (1) that plaintiff was unreasonably negligent in making the purchase and, had it used the care and forethought of an ordinarily prudent man, that the defect in the quantity of the land contracted to be purchased would have been easily discovered by it, and (2) that an abatement in the purchase price would produce a harsh and inequitable result.

■ In support of their first proposition defendants

cite a number of Oregon cases involving fraudulent sales of real property. In each of those cases the court, in commenting upon the right of plaintiff to recover damages because of fraudulent representations made by defendant, pointed out, what seems to be a well-established principle of law, that a purchaser must use reasonable care for his own protection and should not rely blindly upon statements made by a seller or his agent, and that failing to do so he can not recover on the ground that he was misled by the seller.

■ Defendants also call our attention to Pomeroy's Specific Performance of Contracts, 3rd Ed., §§ 442 to 444, inc. In § 442 it is said that the vendee is not entitled to compensation when he had notice, before entering into the contract, that the vendor's title was defective, or that the vendor's interest was partial, or that the subject-matter was deficient; § 443 states that if the purchaser, at the time of the contract, has constructive notice of the defect, or of other facts which will prevent a compliance by the vendor with all the terms of the agreement, he loses all right to compensation. Section 444 enunciates, what appears to be the general rule, that the purchaser's right to compensation for a defect in title, or in the subject-matter, may be cut off "by his unreasonably negligent conduct, or omission to use ordinary prudence in making the purchase. Thus, where the defect would have been easily discovered if the purchaser had used the care and forethought of an ordinarily prudent man, and by simply making reasonable and proper inquiries about the state and condition of the property, and he neglects to use such care, and omits to make any inquiries, he thereby precludes himself from the right to claim compensation, for equity will not aid persons who have been unreasonably careless. A man cannot rush head-

long, and with his eyes shut into a bargain, and then require the court to relieve him from the consequences of his own foolishness.''

■ In 49 Am. Jur., Specific Performance, § 106, p. 125, it is stated that a vendee ''will not be granted specific performance with abatement for any deficiency in the title or quantity or quality of the estate where it would be inequitable to do so, particularly where the rights of third parties would be concerned or where the equitable compulsions for specific performance are lacking.'' It is further stated in that section that specific performance cannot be invoked by a purchaser who, at the time of the making of the contract, ''had notice of the fact that the vendor had a limited interest in the land, or that his title was defective, or the quality deficient.''

Defendants also cite, in further support of their first proposition, *Hughes v. Hadley,* 96 N. J. Eq. 467, 126 A. 33. In that case the court said as follows:

''* * * If, after making allowance for the defect, the vendee will get substantially what he contracted for, the court will compel the vendee to take the land, with a deduction from the purchase price. If, however, the defect concerns an important or essential matter—e.g., if title to the part of a farm on which the farm buildings stood was defective—specific performance would not be granted to the vendor. But where the vendee, as in this case, is suing for specific performance, the rule is different. If he entered into the contract in ignorance of the defect, he may compel conveyance of whatever the vendor has with a proportionate abatement from the price, even though the defect is very considerable, though the vendor owns but half the land, or owns a life estate merely instead of a fee simple. If, however, the vendee knew of the defect when

he made the contract—if he entered into the contract with his eyes open—he has no claim to an abatement from the price, though he may, of course, if he sees fit to accept the land with its defects, and pay the full price, compel a conveyance of whatever the vendor is able to convey.''

It appears from the facts in the case just quoted from that the complainant had entered into a contract with the trustees of an estate to purchase two tracts of land and lease a third for five years. After this contract was entered into one of the trustees died and the suit was brought against the surviving one. It appears that the complainant was willing to carry out the whole contract, provided he could get a good title to both tracts, but he claimed that the defendant could not give good title to the second tract and therefore he asked ''for specific performance only as to the first tract, and abatement as to the rest.''

The testimony showed that the complainant knew that he was ''dealing with trustees under a will, and he knew that a question had been raised about their right to sell some portions of the property.'' Defendant's counsel informed complainant of this before he signed the contract. The court observed: ''The test is: What would an honest man, of ordinary common sense, do, on the strength of the information received? His knowledge of a custom among business men may often necessitate an inquiry. One of the commonest species is that arising from possession of the land by a third person.'' It was found by the court that the complainant was put on inquiry and should have made an investigation, which he did not. The court said that complainant might have a decree for specific performance without abatement; otherwise the court would advise that the suit be dismissed.

■ The record in this case will not warrant a finding that plaintiff did not act as an ordinarily prudent person would have acted under the circumstances. Van Horn, secretary of the plaintiff corporation, conducted all the business for it. He was advised by Cofer before inspecting the tract of land that it was 168 by 170 feet, and later Mr. Joy gave him the same information. He was further told by Mr. Joy that the tract had a frontage of 168 feet on Killingsworth Street and a depth of 170 feet. Later, the written contract contained the same description. At the time this contract was entered into plaintiff was ignorant, and did not have constructive notice, of the fact that defendants did not own a tract of land of the dimensions described in the contract. A reasonably prudent person would not have done more than plaintiff did, before entering into the contract, to ascertain the facts concerning the subject-matter of the transaction, and therefore we think that the plaintiff should not be denied relief because it did not make a more extensive investigation.

■ Defendants thus state their second proposition: "A purchaser may not insist upon abatement of price when the vendor has mistakenly misrepresented the dimensions of a tract if the abatement would produce a harsh or inequitable result". In support of this proposition they cite the following: Annotation, 15 L. R. A., N.S., 81, in which the author, after referring to instances where specific performance had been denied, observed "* * * It will be noted that, where the mistake is not contributed to or induced by the complainant, the refusal of the court specifically to enforce the contract really depends upon the existence of elements other than mistake, and which, in and of themselves, are usually held to be sufficient to justify a court of chancery in refusing its aid to enforce a con-

tract''; 49 Am. Jur., Specific Performance, § 106, which we have already discussed; Annotation, 148 A. L. R. 563, where it is pointed out that, although it is often said that the purchaser is entitled to a decree of specific performance as to a part with an abatement of the price as to the rest, it is clear from a consideration of the cases ''that the granting of the decree rests in the sound discretion of the court and may properly be denied where it would not accomplish equitable results.''

■ In *Wetherby v. Griswold*, 75 Or. 468, 147 P. 388, also cited by defendants, it was held that the vendor should not be required to convey a portion of the land contracted to be sold with covenants of warranty where the vendee knew at the time the contract was entered into that such portion of the premises was subject to the right of a railroad to build a depot thereon. In that case the court applied the well-known doctrine that if a purchaser, at the time of entering into the contract, ''was aware of the defect in the vendor's interest or title, or deficiency in the subject-matter, he is not, on suing for specific performance, entitled to any compensation or abatement of price.''

*Hostetter v. Merrick*, 92 N. J. Eq. 313, 112 A. 487, involved the sale of hotel property which was enclosed by fences on the true line. The contract described the property by metes and bounds. The enclosed property was less than that described in the contract, and the court refused to grant specific performance of the contract with an abatement for the deficiency for the reason that it was entirely clear from the evidence ''that the error thus made in the dimensions of the lot did not in the slightest degree influence the price which the vendee agreed to pay.''

Another case cited by defendants is *Peeler v. Levy,*
26 N. J. Eq. 330. That was a suit for specific perform-
ance of a contract wherein the defendant agreed to
exchange four tracts of land for a farm belonging to
the complainant. Title to two of the four tracts which
defendant agreed to exchange was in his wife, and this
fact was known by plaintiff at the time the contract
was made. She did not sign the contract and had no
information that the exchange was contemplated until
several days after the contract was made. In comment-
ing upon the matter before it for decision, the court
observed:

> "The important question presented by this
> branch of the case is, shall the husband be decreed
> to make compensation for the lands of his wife
> which he cannot convey? The court has power to
> give compensation, but, like the general power of de-
> creeing or refusing specific compensation, it is
> discretionary. * * * Compensation is to be awarded,
> when it appears, from a view of all the circum-
> stances of the particular case, it will subserve the
> ends of justice; and it will be denied, when, upon
> a like view, it appears it will produce hardship
> or injustice to either of the parties. No inflexible
> rule can be adopted applicable to all cases, but each
> case must be decided on its own special facts. Gen-
> erally, it will be denied where the party asking it
> had notice at the time the contract was made, that
> the vendor was agreeing for more than he could
> give or convey, and it appears the vendee has not,
> in consequence of the contract, placed himself in
> a situation from which he cannot extricate him-
> self without loss."

*Mansfield v. Sherman,* 81 Me. 365, 17 A. 300, cited
by defendants, was a suit for specific performance
but did not involve the question of an abatement of
the purchase price. The property described in the con-

tract was located at Bar Harbor, Maine, and the defendant lived in New York. Defendant, in his answer, set up the defense, among others, that he had "named the price under a material mistake as to the extent and boundaries of one of the lots; that he did not understand that the lots included a certain valuable building site, which he never intended to sell at such a price * * *." The evidence is very extensive as to how the mistake occurred. In denying the plaintiff relief, the court observed: "Before granting such a decree, the court should be satisfied, not only of the existence of a valid contract, free from fraud, and enforceable in law, but also of its fairness, and its harmony with equity and good conscience. However strong, clear, and emphatic the language of the contract, however plain the right at law, if a specific performance would for any reason cause a result harsh, inequitable, or contrary to good conscience, the court should refuse such a decree, and leave the parties to their remedies at law."

■ Plaintiff did not either intentionally or unintentionally contribute to defendants' mistake as to the dimensions of the property which defendants contracted to sell to plaintiff. Defendants owned Lots 23 and 24, Portview Tracts, Multnomah County, which were 134 by 160 feet, and these were the tracts of land which they intended to sell, but these lots were not mentioned to plaintiff until after plaintiff had agreed to buy a tract of land described as being 168 by 170 feet. The record does not disclose the reason why defendants made this mistake as to the dimensions of the tract of land. It could have been nothing less than negligence on their part.

It is further contended by defendants that a tract of land of the dimensions of Lots 23 and 24 includes

as large an area of land as the plaintiff was seeking to purchase; that plaintiff did not have any use or need for a larger tract of land, and therefore that plaintiff has not in any way been damaged. The foregoing assertions are not, in our opinion, supported by the evidence.

■ 2 Restatement of the Law of Contracts, § 367, Comment b, states in part as follows: "Mere pecuniary inadequacy of consideration will not generally make the terms of a contract seem too unfair for enforcement unless the degree of inadequacy is extreme. The court will consider all the other facts of the case before determining the existence of the necessary degree of unfairness."

■ Plaintiff entered into the contract here involved in good faith. The price which it agreed to pay had reference to a tract of land with a frontage of 168 feet on N.E. Killingsworth Street, and with a depth of 170 feet. The tract which defendants owned, and which they were able to, and did, transfer to plaintiff, had an area of only 75.07% of the parcel of land which they agreed to sell and its frontage on N. E. Killingsworth Street was 21.44% less: If the abatement in the purchase price is in direct proportion to the deficiency in the quantity of the tract conveyed, it would amount to $560.93, and if it is in direct proportion to the deficiency in its frontage on N. E. Killingsworth Street, it would be $482.40. If an abatement is allowed on either of these bases, we do not think that it would "cause a result harsh, inequitable, or contrary to good conscience". We see no reason why equitable relief should not be granted plaintiff, and we are of the opinion that plaintiff is entitled to a decree of specific performance with an abatement in the purchase price of the tract of land conveyed to it.

The only remaining question for determination is the amount of such abatement. The Circuit Court allowed the sum of $130.50. We are uninformed as to the theory upon which the Court arrived at that amount. The tract of land here involved was, at the time the contract was entered into, uniformly of the same general character. The tract of land conveyed is 34 feet less in width and 10 feet less in depth than the land described in the contract. There is no evidence that the different portions of the tract are of equal value. In other words, there is no evidence that the rear portion of the tract is as valuable as that portion thereof facing on N. E. Killingsworth Street, nor is there any evidence of the relative value of such portions of the tract. However, the front footage (that portion fronting on N. E. Killingsworth Street) does not appear to vary in value. We are therefore of the opinion that the abatement should not be computed on the percentage of the deficiency in the entire tract but on the deficiency of frontage on N. E. Killingsworth Street. On this formula an abatement of $482.40 should be allowed in the purchase price.

The decree appealed from is therefore modified by allowing plaintiff an abatement of the purchase price in the sum of $482.40 in lieu of the $130.50 allowed by the Circuit Court.

Belt, J., did not participate in this decision.