Argued and submitted January 13, 1992, decision of Court of Appeals and judgment of circuit court reversed, and case remanded to circuit court for further proceedings March 4, 1993

Charles H. COMBS
and Rosada K. Combs;
and Transamerica Title Insurance Company,
a California corporation,
*Petitioners on Review,*

*v.*

Mark E. LOEBNER,
*Respondent on Review.*

Mark E. LOEBNER,
*Counterclaim Plaintiff,*
*Respondent on Review,*

*v.*

TRANSAMERICA TITLE
INSURANCE COMPANY,
a California corporation,
and Charles H. Combs and Rosada K. Combs,
*Counterclaim Defendants,*
*Petitioners on Review.*

(CC A8809-05093; CA A62836; SC S38391)

846 P2d 401

Don G. Carter, of McEwen, Gisvold, Rankin & Stewart, Portland, filed the petition and argued the cause for petitioners on review.

Robert J. Ericsson, of Ericsson & Ericsson, Portland, argued the cause for respondent on review. With him on the response was William Lewis, Portland.

CARSON, C. J.

## CARSON, C. J.

This case involves a vendor's failure to convey all the land described in a land sale contract. At the time the contract was formed, both vendor and purchasers were mistaken as to what land vendor owned, and neither made use of available information to discover their mistake until after purchasers had relied on the erroneous contract description by initiating construction of a house. A jury, instructed that purchasers must use reasonable care to safeguard their own interests in forming land sale contracts, found that the parties' contract had not been breached and, consequently, that the vendor was not liable for the purchasers' damages. The Court of Appeals affirmed. *Combs v. Loebner*, 108 Or App 85, 814 P2d 531 (1991). We allowed review to address the duty of a purchaser in the formation of a land sale contract.

Plaintiffs Charles and Rosada Combs (purchasers) agreed to purchase undeveloped real property from defendant (vendor) upon which purchasers intended to build a home. Charles Combs drafted the contract. Plaintiff Transamerica Title Company (Transamerica) issued a preliminary title report and a policy of title insurance to purchasers. The land description in the contract, in the title report, and in vendor's recorded Clackamas County deed was "Lot 18, Fields Addition." Vendor never owned all of Lot 18; a portion of it had been conveyed to Oregon City (the city) in 1939, long before vendor purchased the lot. The city's land was an undeveloped "nature park" and was visually indistinguishable from the remainder of Lot 18. There are no allegations that vendor, purchasers, or Transamerica had actual knowledge of the inaccurate land description, although all had access to accurate descriptions in other recorded and unrecorded documents.

Before the purchase, vendor assured purchasers that they could build their house on the one flat spot on the otherwise steeply sloping lot. After purchasers had cleared the land and partially excavated in preparation for building on that spot, they discovered that their building site was on the city's part of Lot 18. Moving the construction site substantially increased engineering and excavation costs. Purchasers asserted a claim against Transamerica, and Transamerica paid purchasers the limit of the title policy.

Purchasers then asserted claims against vendor for specific performance, breach of contract, and negligence. Transamerica asserted claims against vendor that are not at issue here. Vendor counterclaimed for reformation of the contract. The trial court granted partial summary judgment to purchasers on the specific performance claim, ordering vendor to convey so much of Lot 18 as he owned. After trial, the court denied vendor's reformation counterclaim and submitted the remaining claims to the jury. The jury found for vendor on the breach of contract question and, as instructed by the verdict form, made no other findings.

Purchasers assign as error this jury instruction:

"So the first consideration for you to make is whether or not [vendor] breached the contract. And in that regard, I will tell you that a buyer must use reasonable care to safeguard his own interests and cannot rely blindly on the sellers' statements. He must make use of his means of knowledge. In failing to do so, he cannot claim that he was misled."

The instruction was based upon this court's opinion in *Van Horn Const. Corp. v. Joy*, 186 Or 473, 207 P2d 157 (1949). The purchaser of land in *Van Horn* sought specific performance and equitable abatement after its vendors mistakenly overrepresented the quantity of land that they were to convey. On *de novo* review, this court discussed and applied the general rule of specific performance and price abatement applicable to land sales contracts: When there is a deficiency in the quantity of land described in a land sale contract, a purchaser is entitled to have the vendor convey what the vendor has and to be compensated by the vendor for the shortage. The *Van Horn* court acknowledged an exception to the rule in cases involving fraud, namely, "that a purchaser [of land] must use reasonable care for his own protection and should not rely blindly upon statements made by a seller or his agent, and that failing to do so he can not recover on the ground that he was misled by the seller." *Id.* at 482.

The passage of *Van Horn* cited in the jury instruction was not intended to be a general statement of Oregon law concerning contracts for the sale of real property. There is no general requirement in Oregon for a purchaser to "use reasonable care to safeguard his own interests" by independently investigating a vendor's description of the land that

the vendor purports to convey. The *Van Horn* court noted that a purchaser's duty to protect his or her own interest is an *exception* to the general rule and decided that the purchaser in that case, who had *not* investigated the vendors' inaccurate land description, *was* entitled to specific performance and equitable abatement. *Van Horn* was not a fraud case, and neither is the case before us.

The general rule was restated more recently in *Wittick v. Miles*, 274 Or 1, 6, 545 P2d 121 (1976):

> "If the written contract provides that the vendor shall convey the premises free from encumbrances, it is immaterial that the purchaser had knowledge, at the time of contracting, that there was an encumbrance on the property. The vendor assumed the risk of acquiring clear title and the purchaser has the right to insist on the terms of the contract, *Crahane et al v. Swan*, 212 Or 143, 154-155, 318 P2d 942 (1957)."

*Crahane v. Swan, supra*, stated that, if a purchaser is aware of a defect in title at the time of contracting to buy land, the purchaser is not entitled to price abatement in an action for specific performance, but noted:

> "The foregoing rule is, however, subject to an exception: When the written contract between the parties provides that the vendor shall convey the premises free from encumbrances, it is immaterial that the purchaser had notice at the time of the contract that there was an encumbrance on the property. The purchaser has a right to insist upon the terms of his contract. The vendor, agreeing to sell land, is bound to know whether he has title, and is answerable if he is unable to fulfill his contract, for a vendor who agrees to convey land at a time when he knows he has no right to convey assumes the risk of acquiring title and making the conveyance or responding in damages for the vendee's loss of his bargain." 212 Or at 154.

■ We conclude from the *Van Horn, Wittick*, and *Crahane* cases that a purchaser of land generally may rely on the vendor's representation of what land the vendor is conveying where, as here, that representation is made part of a written and executed contract of sale. The reasonableness of a vendor's representations generally is not at issue in a contract case.

■  Unlike any of the cited cases, the case before us does not involve a claim for specific performance with abatement of price.[1] Nor does it involve a claim for rescission or reformation based on fraud or misrepresentation. Parties to a breached land sale contract may choose to seek rescission, specific performance, *or* contract damages. *Schreiber v. Karpow*, 290 Or 817, 824-25, 626 P2d 891 (1981). Rescission and specific performance claims involve equitable principles of justice and fairness and a weighing of the relative responsibility of the parties. However, if a party elects a legal remedy for breach of a land sale contract, contract principles apply. *See Freedman v. Cholick*, 233 Or 569, 379 P2d 575 (1963) (where vendor breaches contract to sell land, purchaser may recover damages based on the benefit of his bargain); *Crahane v. Swan, supra* (same). The jury in this case was presented with a *contract* question: Was the parties' contract breached? Principles of equity were not relevant to that inquiry.

The Court of Appeals adopted vendor's assertion that "it would make no sense for the general rule requiring reasonable care on the buyer's part to apply only in cases of fraud and not in cases where the seller's incorrect communications or assumptions about title are innocent." *Combs v. Loebner, supra*, 108 Or App at 90. Neither vendor nor the Court of Appeals cites any authority for that proposition.

■  We conclude that the distinction does make sense. Fraud cases involve tort remedies and necessarily implicate the concept of fault. On the other hand, contract cases based solely on breach of a provision written in the contract are remedied by contract damages and normally do not involve an analysis of the mental states of the parties. *Georgetown Realty, Inc. v. The Home Ins. Co.*, 313 Or 97, 106, 831 P2d 7 (1992). The tort concept of fault simply plays no role in enforcement of a contract claim. *Martini v. Beaverton Ins. Agency, Inc.*, 314 Or 200, 210, 838 P2d 1061 (1992). In the

---

[1] Purchasers initially sought specific performance, but, after defendant's interest in Lot 18 was conveyed to them pursuant to a grant of partial summary judgment, without, however, an abatement in price, they pursued their breach of contract claim. A contract remedy is not inconsistent with a specific performance remedy and an initial claim for specific performance followed by a claim for contract damages on the same facts is not barred by the doctrine of election of remedies. *Helmer v. Transamerica Title Ins. Co.*, 279 Or 457, 463-64, 569 P2d 10 (1977).

absence of fraud, contracts in which a seller purports to sell what he or she does not own at the time of contracting are enforceable, just as are contracts in which a purchaser unintentionally agrees to buy what he or she does not need. There is no general "duty of reasonable care" in the formation of contracts. *Tolbert v. First National Bank*, 312 Or 485, 823 P2d 965 (1991). We are aware of no authority and no defensible rationale for fashioning a different rule regarding the formation of *land sale* contracts.

■■    The jury instruction regarding a purchaser's "blind reliance" was an incorrect statement of the applicable contract law. Instructional error is reversible if the instruction "probably created an erroneous impression of the law in the minds of the jurors which affected the outcome of the case." *Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970). That is the case here.[2]

The decision of the Court of Appeals and the judgment of the circuit court are reversed, and the case is remanded to the circuit court for further proceedings.

---

[2] The Court of Appeals concluded that, even if purchasers had no duty to use reasonable care to safeguard their own interests, vendor presented sufficient evidence regarding equitable estoppel to justify the jury's finding that there was no breach of contract. *Combs v. Loebner*, 108 Or App 85, 91, 814 P2d 531 (1991). Purchasers assign as error that conclusion, because vendor presented insufficient evidence of his right to rely on representations made by purchasers and Transamerica. We need not address the estoppel issue, because nothing in the verdict form reveals the basis for the jury's finding, and we will not assume that the jury based its verdict on a theory other than the one presented by the erroneous instruction. *Cf. Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 357, 788 P2d 428 (1990) (this court follows a "we can't tell" rule requiring a new trial when more than one theory of liability is presented to a jury and at least one of the theories is unsupported by the evidence and it cannot be determined on which theory the jury based its verdict).