Argued and submitted March 12, reversed and remanded in part; otherwise affirmed October 30, appellants' Motion for Reconsideration filed November 19, 1996, allowed by opinion February 12, 1997
See 146 Or App 333, 932 P2d 110 (1997)

## ROSBORO LUMBER CO.,
*Respondent,*

*v.*

## Gary APSEL
and Lynn Apsel,
husband and wife,
*Appellants.*

(16-93-04039; CA A83211)

926 P2d 329

George W. Kelly argued the cause and filed the briefs for appellants.

G. David Jewett argued the cause for respondent. With him on the brief was Thorp, Purdy, Jewett, Urness & Wilkinson, P.C.

Before Deits, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

**LANDAU, J.**

This is an action for breach of contract and specific performance of an agreement to sell timber. The jury returned a verdict for plaintiff on the breach of contract claim and awarded damages. The trial court then entered a judgment awarding damages to plaintiff, to be paid by a specified date and time, and further awarding specific performance in the event that the damages are not timely paid. Defendants appeal, asserting multiple assignments of error, including that the trial court erred in not permitting them to assert innocent misrepresentation as an affirmative defense to the breach of contract claim and that the judgment improperly includes an order to pay plaintiff's deposition costs. We reverse as to the award of deposition costs and otherwise affirm, writing only to address the assignments concerning innocent misrepresentation and deposition costs.

We first address defendants' contention that the trial court erred in directing a verdict on their innocent misrepresentation defense. In so doing, we examine the facts in the light most favorable to defendants to determine whether plaintiff is entitled to judgment on the misrepresentation defense as a matter of law. *Lindstrand v. Transamerica Title Ins. Co.*, 127 Or App 693, 695, 874 P2d 82 (1994).

Defendant Lynn Apsel sold her California residence for a net gain of approximately $455,000. She and her husband moved to Oregon and invested the cash proceeds from the sale of the California residence. Among other things, they purchased several pieces of investment property in Oregon, including 275 acres of forested land in Lane County. The purchase agreement for that parcel of property required a balloon payment in 1992. Defendants experienced cash flow problems in 1992 and were unable to make the balloon payment on schedule. Faced with imminent foreclosure, Lynn decided to sell timber from the land to raise enough money to keep the property.

Lynn hired a timber consultant, Earl Gingerich, to conduct an assessment of the harvestable conifers—known as a "timber cruise"—on the property. Gingerich's analysis was performed by examining a sample area of land and then

extrapolating from the sample to arrive at an estimate of timber contained in a larger area. He took several days to perform the task and reported his findings to Lynn at the end of each day.

Meanwhile, Lynn received an offer from a neighboring property owner to purchase the timber on a northern portion of the property for $145,000. Lynn consulted with Gingerich, who advised her that she could get a better price by dealing directly with a lumber company. She declined the offer.

At that point, plaintiff became interested in the property. Mike Boyd negotiated directly with Lynn on plaintiff's behalf. After successful preliminary negotiations, plaintiff had portions of the property cruised. Boyd then told Lynn that, in one specified area of the property, a total of $200,000 in timber could be recovered.[1] Lynn believed Boyd's estimates:

> "[H]e stressed that their cruise had shown it, and I totally believed him.

> "I had never dealt in business. I was very naive, so it never occurred to me not to believe him. I just believed him * * * and he said I could trust him. That's what he said. He was a church-going man, he was religious, and all this talk."

Lynn consulted with an attorney who reviewed a draft of a written agreement between the parties. The parties negotiated a last-minute price increase of $7,000 in exchange for additional timber from a separate area of the property. On June 5, 1992, the parties executed a timber deed, and plaintiff paid defendants $207,000. The deed entitled plaintiff to harvest $207,000 in timber from defendants' property any time before December 31, 1993. The agreement further provided that, if the value of the timber plaintiff ultimately harvested totaled less than $207,000, defendants would offer either additional timber or cash to make up the difference.

---

[1] The parties vigorously dispute precisely how much timber Boyd said could be harvested from the specified area of the property. That dispute, however, is not pertinent to our disposition of the assignment that is the subject of our written discussion.

Several months later, Lynn met with real estate agents regarding a separate parcel of property. One of the agents, Dave Larson, had experience in the timber industry. Lynn told Larson about her agreement with plaintiff and asked Larson to give her a "walk through" estimate of the timber volume on the property that was the subject of the timber deed. Larson did so and concluded that there was insufficient timber in the contract area to produce a $207,000 harvest. Lynn then retained a forester to conduct a timber cruise. That forester concluded that the volume of timber in the contract area would produce approximately $158,000.

Lynn contacted plaintiff to renegotiate the contract. Plaintiff refused. In May 1993, when plaintiff attempted to begin harvesting, its employees found a locked gate and two automobiles blocking the road. A sign in the window of one car stated that the timber deed "is in legal dispute. The property owners will not permit anyone on the property until this matter is legally resolved."

Plaintiff then initiated this action, requesting specific performance and, in the alternative, damages for breach of contract. Defendants answered, alleging numerous counterclaims and affirmative defenses, including innocent misrepresentation. According to the allegations of that defense, the timber deed is unenforceable, because it was executed upon their reliance on Boyd's innocent misrepresentation as to the amount of timber that could be harvested from their land. The trial court directed a verdict for plaintiff as to that affirmative defense.

On appeal, defendants argue that they should have been allowed to go forward with their innocent misrepresentation defense, because they presented evidence on each of its elements. Plaintiff contends that the trial court's ruling was correct, because innocent misrepresentation is a basis for rescission, not a defense to a breach of contract action. In any event, plaintiff argues, the trial court correctly allowed the motion, because defendants failed to establish a triable issue as to the requirements of an innocent misrepresentation defense, including the existence of a special relationship between the parties that justified defendants' reliance on Boyd's timber estimates. Even assuming that no such special

relationship is required, plaintiff contends, there is no evidence of a right to rely on Boyd's estimates. Defendants reply that, although there is no authority providing for a contract defense of innocent misrepresentation, there should be. They further argue that proof of a special relationship should not be required to establish the defense. Finally, they argue that, in any event, Lynn had a right to rely on Boyd's estimates because of her limited education and experience.

We need not decide whether innocent misrepresentation may be asserted as an affirmative defense to a breach of contract claim. *Cf., Burt, Vetterlein & Bushnell, P.C. v. Stein*, 117 Or App 363, 372-74, 844 P2d 239 (1992), *rev den* 316 Or 527 (1993) (assuming, but not deciding, validity of misrepresentation defenses). Nor do we need to decide whether proof of a special relationship is a necessary element of that defense. *Cf., Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992) (recognizing tort claim for negligent misrepresentation predicated on duty of care arising out of special relationship). That is because, even if we assume both matters in favor of defendants, the evidence still is insufficient to create a triable issue of fact as to their right to rely on Boyd's timber estimates.

■ The Supreme Court held in *Soursby v. Hawkins*, 307 Or 79, 763 P2d 725 (1988), that innocent misrepresentation may support a claim for rescission of a real estate agreement if the party who relied on the misrepresentations of another establishes a right to have done so. The court described the right to rely as presenting " 'the question of the duty of the party to whom the representations have been made to use diligence in respect to those representations.' " *Id.* at 86, *quoting Johnson v. Cofer*, 204 Or 142, 150, 281 P2d 981 (1955). Whether the party exercised due diligence, the court said, depends on whether " 'the prospective buyers have or can obtain equal means of information and are equally qualified to judge certain factors' surrounding the misrepresentation." *Soursby*, 307 Or at 86, *quoting Miller v. Protrka*, 193 Or 585, 597, 238 P2d 753 (1952). Whether the parties "have or can obtain equal means of information," in turn, depends on whether it would be unreasonably difficult under the circumstances for the party to whom the representations have

been made to perform an independent investigation. *Soursby*, 307 Or at 87.

In this case, there is a complete absence of evidence that it would have been unreasonably difficult for defendants to conduct an investigation to determine the harvestable timber on their own property. To the contrary, the evidence shows that, even before entering into negotiations with Boyd concerning the sale of timber, Lynn consulted with a forester concerning the harvestable timber on portions of the property. Indeed, after executing the timber deed, Lynn obtained the expert advice of at least two other consultants about the accuracy of Boyd's timber estimates. Defendants offer no explanation why they did not have consultants confirm those estimates before executing the deed. There is, thus, no evidence from which a reasonable juror could conclude that it was unreasonably difficult for defendants to have investigated Boyd's estimates of the amount of timber available on their property independently. There being no evidence that they had a right to rely on Boyd's representations, the trial court did not err in allowing a directed verdict on defendants' affirmative defense.

■ We turn to defendants' contention that the trial court erred in requiring them to pay deposition costs to plaintiff. ORCP 68 A(2) provides that deposition expenses are not allowed "except as otherwise provided by rule or statute." Plaintiff identifies no such exception applicable to this case. The trial court, therefore, erred in ordering defendants to pay plaintiff's deposition costs. *Benson and Youngblutt*, 141 Or App 458, 466, 919 P2d 496 (1996).

We have considered defendants' other assignments and reject them without discussion.

Reversed and remanded for entry of modified judgment eliminating award of deposition costs to plaintiff; otherwise affirmed.