Argued and submitted December 21, 1998, affirmed January 12, 2000

Vernon H. LESHER
and Janene R. Lesher,
husband and wife,
*Respondents,*

*v.*

Ethel STRID,
successor trustee of the Strid Family Trust u/a/d
January 29, 1990,
*Appellant.*

(96-CV-0100; CA A99602)

996 P2d 988

James S. Coon argued the cause for appellant. With him on the briefs was Swanson, Thomas & Coon.

Walter L. Cauble argued the cause for respondents. With him on the brief was Schultz, Salisbury, Cauble & Dole.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* Warren, J., retired.

## WOLLHEIM, J.

Defendant appeals from a judgment of the trial court granting plaintiff's request for rescission of a contract for the sale of real property. As relevant to this appeal, plaintiffs Vernon and Janene Lesher, purchasers of an 18-acre parcel of property in Josephine County (the subject property), sought rescission of the contract under theories of a mutual mistake of fact or an innocent misrepresentation of fact regarding the existence of water rights appurtenant to the property. The trial court granted rescission on those grounds. On *de novo* review, ORS 19.415(3); *Shop. Centers v. Stand. Growth Prop.*, 265 Or 405, 422, 509 P2d 1189 (1973), we affirm.

In May 1995, plaintiffs agreed to purchase the subject property from defendant with the intention of using it to raise horses. In purchasing the subject property, they relied on their impression that at least four acres of the subject property had a right to irrigation from Slate Creek. The earnest money agreement to the contract provided:

> "D. **Water Rights** are being conveyed to Buyer at the close of escrow. * * * Seller will provide Buyer with a written explanation of the operation of the irrigation system, water right certificates, and inventory of irrigation equipment included in sale." (Boldface in original.)

The earnest money agreement also provided:

> "**THE SUBJECT PROPERTY IS BEING SOLD 'AS IS'** subject to the Buyer's approval of the tests and conditions as stated herein. Buyer declares that Buyer is not depending on any other statement of the Seller or licensees that is not incorporated by reference in this earnest money contract." (Boldface in original.)

Before signing the earnest money agreement, defendants presented to plaintiffs, through their mutual realtor, a

1977 Water Resources Department water rights certificate and a map purporting to show an area of the subject property to be irrigated ("area to be irrigated" map). The 1977 water rights certificate, issued pursuant to ORS 539.140, was mailed by the Water Resources Department to defendant. The 1977 certificate merely described, and did not modify, a portion of the water rights declared in the Jackson County Circuit Court's 1919 Rogue River water rights decree.[1] In short, the 1977 water rights certificate,[2] by reference to the 1919 decree, represented that the 40-acre quadrant, the southwest quarter of the southeast quarter of section 10 that includes the 18-acre subject property, carries a four-acre water right with a priority of 1892. Thus, the 1977 certificate and 1919 decree do not state that the four acres are appurtenant to the subject property in particular.

However, plaintiffs argue that the "area to be irrigated" map that accompanied the 1977 certificate and the earnest money agreement shows a four- to five-acre area to be irrigated on the subject property. The "area to be irrigated" map is, in many places, unreadable and of poor quality. However, one may discern a shaded area, entitled "area to be irrigated," adjacent to Slate Creek within what would appear to be the subject property. A general map of the subject property and surrounding area shows the following:

---

[1] The 1919 Rogue River Decree stated, in part:

**"SLATE CREEK**

"* * * * *

"MARY M. HAIR * * * JENNIE M. KEMP * * *; *Priority 1892*; 0.25 second foot; for Irrigation of 10 acres, and Domestic and Stock use; *Brown Ditch*; Description of place of use; 1 acre in NE1/4 SW1/4; 5 acres in SE1/4 SW1/4; *4 acres in SW1/4 SE1/4; Sec. 10*, Tp. 37, S. R. 7 W. W. M., Josephine County, Oregon." (Emphasis added.)

[2] The 1977 water rights certificate describes the following water rights appurtenant to the following property:

"1.0 acre NE1/4 SW1/4
4.0 acres SW1/4 SE1/4
Section 10
T. 37 S., R. 7 W., W. M."

SE1/4 of Section 10

NW1/4 · NE1/4

"Area to be Irrigated"

Slate Creek

Subject Property

SW1/4 · SE1/4

Elliot Creek

N

Map not to scale

Vernon Lesher testified that, at the time plaintiffs purchased the subject property, he believed that the subject property carried four acres of appurtenant water rights by virtue of the 1977 certificate and "area to be irrigated" map. Defendant's representative, Sally Doss,[3] agreed that, at the time of the conveyance, Doss believed that a 1892 four-acre irrigation right was appurtenant to the subject property and that, if it was not, then she was mistaken. Vernon testified that before buying the subject property, plaintiffs owned property with two irrigated acres. Vernon testified that plaintiffs intended to and, in fact, did sell the two-acre water right property and sought the subject property to expand their ability to raise horses. In particular, plaintiffs needed to have adequate acreage for pasturing the horses. Vernon testified that irrigation was necessary for creating pasture. He stated that, without a right to irrigate four acres, plaintiffs would not have purchased the property.

Plaintiffs did not obtain the services of an attorney or a water rights examiner before purchasing the property.

---

[3] Sally Doss is defendant's daughter. Defendant Ethel Strid is the trustee of the Strid Family Trust, which conveyed the subject property, and Doss is a second trustee for the trust. Because of defendant's ill health, Doss testified that she actually managed the trust, including the sale of the subject property to plaintiffs.

Vernon explained that plaintiffs visited the property numerous times and that they noticed that the property has a flat area that is bordered on one side by a hill and on the other by Slate Creek. The main house sits on top of the hill and overlooks the flat area. During their visits, plaintiffs noticed a piece of irrigation equipment on the subject property. The flat area described by Vernon appears to coincide roughly with the "area to be irrigated" on the map provided to plaintiffs by defendant and accompanying the earnest money agreement. Vernon believed that the flat area represented the location of the four-acre water right described in the 1977 certificate that accompanied the earnest money agreement.

After purchasing the subject property and before establishing a pasture, plaintiffs learned that the property might not carry a four-acre water right. Plaintiffs hired Mr. Spero, a certified water rights examiner and land surveyor, to investigate the property's water rights. Spero concluded that, at most, only 1.2 to 1.6 acres of irrigation water rights were appurtenant to the subject property. Spero did not specify the priority date of that water right.[4] Spero did conclude, however, that the full four acres of irrigation water rights that became appurtenant to the larger 40-acre tract by virtue of the 1892 priority were not appurtenant to the subject property.

Spero's opinion had two bases. First, based on a 1911 adjudication map on which the 1919 Rogue River decree may have been based, Spero concluded that the water right is located on the east side of Elliot Creek, not the west side where the subject property is located. Second, Spero explained that the 1892 right was supplied by Brown Ditch and that at the turn of the century the right depended on gravity irrigation, meaning that the irrigated acres had to be lower in elevation than the ditch. Spero testified that after surveying the area and plotting where the ditch existed on the subject property, he concluded that only 1.2 to 1.6 acres of

---

[4] Plaintiffs do not dispute that eight-tenths of an acre of an irrigation water right is appurtenant to the subject property with a priority date of 1944. We make no finding whether the 1944 water right coincides with the irrigated acres described by Spero.

the subject property fell below the ditch and could have historically been irrigated by gravity. In particular, Spero explained:

"[U]sing survey equipment I plotted the ditch as it existed, as exists where I could find it. * * *.

"[T]he Brown ditch is visible * * * just before it crossed Slate Creek * * * to the west of the property. And the Brown ditch is visible along the base of the hill on the property. * * * [T]he water was coming from Slate Creek, elevation has to decline, [and the ditch had to flow] downhill. I found an elevation of 106.7 here to the ditch where the ditch did fade out on the property to the west[.] I found an elevation only about seven-tenths of a foot lower where the ditch reappears. It's been graded out in this area in-between. But since there's only about seven-tenths of a foot of drop it pretty tightly limits where the ditch could have been. And projected from topography I plotted where that would have gone and I concluded that * * * everything that could possibly have been below the ditch and therefore gravity irrigated from the ditch * * * was between 1.2 and 1.6 acres."

Defendant's expert, Mr. Moon, is an attorney specializing in water rights and has rendered hundreds of opinions on the existence, extent and vintage of various water rights. With respect to the first basis for Spero's opinion, Moon testified that the 1911 adjudication map was inaccurate and that it was not competent for establishing the historical landmarks marking the location of the irrigated acres. With respect to the second basis for Spero's opinion, Moon felt that Spero's conclusion that only 1.2 to 1.6 acres fell below the ditch was "a little low."

"I think because of the way [Spero] tried to extrapolate from having one piece [of Brown Ditch] at one end and on his exhibit he showed an upper piece of the Brown ditch[.] * * * I never saw anything at the upper end of the property that I would feel comfortable saying was a ditch. From my view of the land and the topography as well as the U.S. [Geological Survey] topographical map I think 1.6 [acres] is low."

Moon physically examined the subject property only once and testified that the water right was appurtenant to the full four acres of the subject property abutting Slate Creek. However,

Moon is not a surveyor or a certified water rights examiner. In response to Moon's testimony, Spero reconfirmed his opinion that only 1.2 to 1.6 acres were available for gravity irrigation.

The trial court found by a preponderance of evidence that the 1892 four-acre water right described in the 1919 decree and 1977 certificate was "not appurtenant to the subject property." It found that both plaintiffs and defendant believed at the time of the sale that the right was appurtenant to the property and that the supply of adequate irrigated land was an essential part of the bargain for plaintiffs. In the alternative, the court found that defendant innocently misrepresented to plaintiffs that those rights existed appurtenant to the subject property. It found that plaintiffs reasonably relied on the representations and documents provided to plaintiffs pertaining to the water rights, and that plaintiffs' belief about the water rights was a material inducement to their purchase of the subject property. The trial court found that a mutual mistake of a material fact by plaintiffs and defendant "and/or" an innocent misrepresentation of fact by defendant merited rescission of the contract.

On appeal, defendant argues that plaintiffs are not entitled to rescission, because they have not proven by clear and convincing evidence that a mistake of fact occurred about the water rights. In the alternative, defendant argues that plaintiffs unjustifiably relied on defendant's representation about the water rights because defendant's representation was extrinsic to the contract and because plaintiffs were grossly negligent in relying on the 1977 certificate and the "area to be irrigated" map to conclude that four acres of irrigation water rights with an 1892 priority date were appurtenant to the subject property.

Grounds for rescission on the basis of a mutual mistake of fact or innocent misrepresentation must be proved by clear and convincing evidence. *Murray and Murray,* 120 Or App 216, 218-19, 852 P2d 204 (1993); *Hoover v. Hegewald,* 70 Or App 223, 230, 689 P2d 965 (1984), *rev den* 298 Or 773 (1985). An innocent misrepresentation of fact renders a contract voidable by a party if the party's "manifestation of assent is induced by * * * a material misrepresentation by

the other party upon which the recipient is justified in relying[.]" *Restatement (Second) of Contracts* § 164 (1981); *accord Dreifus Lbr. Co. v. Werner et ux*, 221 Or 467, 469-70, 351 P2d 684 (1960). A mutual mistake of fact renders a contract voidable by the adversely affected party, "where the parties are mistaken as to the facts existing at the time of the contract, if the mistake is so fundamental that it frustrates the purpose of the contract," *Murray*, 120 Or App at 219 (emphasis omitted), and where the adversely affected party does not bear the risk of the mistake, *Restatement (Second) of Contracts* § 152 (1981). A mistake "is a state of mind which is not in accord with the facts." *Ellison v. Watson*, 53 Or App 923, 927, 633 P2d 840, *rev den* 292 Or 109 (1981).

■     Even though it appears that the trial court did not apply the clear and convincing standard, on *de novo* review, we find that plaintiffs' evidence meets that standard. Both defendant and plaintiffs testified that they believed that the four acres of water rights were appurtenant to the subject property. Defendant does not dispute that the 1977 water rights certificate and the "area to be irrigated" map are her representation about the water right. Defendant argues, however, that plaintiffs have not established, by clear and convincing evidence, that the subject property does not have four acres of irrigation rights and argues, in the alternative, that plaintiffs unjustifiably relied on that representation.

Defendant first argues that, as a matter of law, the Jackson County Circuit Court's 1919 Rogue River decree, on which the Water Resources Department's 1977 certificate is based, conclusively established the location of the water right. Further, defendant argues that the 1977 certificate that described the rights established in that 1919 decree is conclusive. ORS 539.200.[5] Plaintiffs do not challenge the conclusiveness or validity of that decree or certificate.[6] However,

---

[5] ORS 539.200 provides:

"The determinations of the Water Resources Director, as confirmed or modified as provided by this chapter in proceedings, shall be conclusive as to all prior rights and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the determination."

[6] We also note that plaintiffs are not requesting a determination, pursuant to ORS 539.021, of the relative rights that the subject property, in particular, has to the waters of Slate Creek.

as plaintiffs contend, the decree and certificate declare that a four-acre water right is appurtenant to the entire 40 acres of the southwest quarter of the southeast quarter of section 10. The 1919 decree did not adjudicate whether those acres were appurtenant to the subject property in particular. Plaintiffs argue that, as a matter of fact, the evidence shows that the four-acre water right is not appurtenant to the subject property. At trial, defendant presented evidence questioning the accuracy of the 1911 adjucation map. Thus, defendant's evidence may cast doubt on the first basis for Spero's opinion, which states that, based on the 1911 adjudication map, those four acres are located on the west, not east, side of Elliot Creek. We, however, find Spero's second basis conclusive. Plaintiffs have shown that, regardless of the water right's priority, plaintiffs have received *at most* a 1.6 acre water right.[7] Spero gave a persuasive opinion about the extent of the water right appurtenant to the subject property based on a land survey and concluded that it did not exceed 1.6 acres. Defendant's expert, who is not a surveyor, was not persuasive on that point.[8] We find that plaintiffs have shown by clear and convincing evidence that a four-acre water right was not appurtenant to the subject property.[9]

■  Plaintiffs also established by clear and convincing evidence that the existence of the four-acre water right was material and essential to the contract. Vernon testified that the motivation for the purchase was to expand his ability to raise horses from property they already owned where they had a two-acre irrigation right and that the subject property's water right was essential to the contract. Certainly, a smaller water right would limit, not expand, plaintiffs' ability to raise horses. The mistake, therefore, goes to the very essence of the contract.

---

[7] Again, plaintiffs do not dispute that a 1944 eight-tenths of an acre water right is appurtenant to the property, about which they were not informed until after purchasing the property.

[8] Our conclusion is consistent with the trial court's more general finding that plaintiffs' expert was "more compelling in his testimony" than defendant's expert.

[9] Again, we do not decide which property, in particular, contains which rights to water from Slate Creek. That is beyond the scope of this litigation. The result of this opinion rests solely on the conclusion that a full four acres of irrigation water rights, regardless of the priority of the water rights that may, in fact, exist on the subject property, are not appurtenant to the subject property.

◼ We next consider defendant's arguments that plaintiffs bore the risk of that mistake. The *Restatement (Second) of Contracts* § 154 (1981) explains that a party bears the risk of a mistake, in part, if the risk is allocated to the party by agreement of the parties, or if the risk is allocated to the party "by the court on the ground that it is reasonable in the circumstances to do so." We find nothing in the contract that would allocate to plaintiffs the risk of a mistake as to the existence of a four-acre water right.

◼ Defendant argues in the alternative that plaintiffs' mistake of fact is the result of defendant's misrepresentation, on which plaintiffs could not reasonably rely. An "innocent misrepresentation may support a claim for rescission of a real estate agreement if the party who relied on the misrepresentations of another establishes a right to have done so." *Rosboro Lumber Co. v. Apsel*, 144 Or App 298, 303, 926 P2d 329 (1996), *adhered to on recons* 146 Or App 333, 932 P2d 110, *rev den* 326 Or 57 (1997), *rev den* 326 Or 530 (1998) (citing *Soursby v. Hawkins*, 307 Or 79, 763 P2d 725 (1988)).

Defendant argues that her representations about the four-acre water right were extrinsic to the contract and that the contract's "as is" clause expressly excluded reliance on such extrinsic representations. In *Wilkinson v. Carpenter*, 276 Or 311, 314, 554 P2d 512 (1976), the Supreme Court held that when a contract contains a "disclaimer" clause—one that declares that the buyer is not relying on extrinsic representations by the seller—that clause may prevent a buyer from relying on any innocent misrepresentation as a basis for rescission. *Accord Hoover*, 70 Or App at 230. The statements here on which plaintiffs relied, however, were not extrinsic to the contract. The "as is" clause specifically contemplated reliance on any statements by the seller that were "incorporated by reference" in the earnest money agreement. The earnest money agreement specifically referred to the conveyance of water rights. Defendant argues that a "promise to deliver water rights is not an incorporation by reference of a water rights certificate into the earnest money receipt." However, the earnest money agreement does more than promise to convey *a* water right. It promises to convey *the* water right *explained by defendant*. That explanation included the 1977 water rights certificate and the "area to be irrigated" map.

Those documents are thus incorporated into the contract, and the contract's disclaimer clause does not prohibit plaintiffs' reliance on those documents.

■       The right to rely depends in part on the relying party's exercise of due diligence with respect to those representations. *Rosboro Lumber Co.*, 144 Or App at 303. In *Combs v. Loebner*, 315 Or 444, 448-49, 846 P2d 401 (1993), the Supreme Court explained that "[t]here is no general requirement in Oregon for a purchaser to 'use reasonable care to safeguard his own interests' by independently investigating a vendor's description of the land that the vendor purports to convey." Rather, "a purchaser of land generally may rely on the vendor's representation of what land the vendor is conveying where * * * that representation is made part of a written and executed contract of sale." *Id.* at 449; *see also Dreifus Lbr. Co.*, 221 Or at 469-70; *Rosboro Lumber Co.*, 146 Or App at 336-37. Plaintiffs were entitled to rely on defendant's representation in the earnest money agreement concerning the water right appurtenant to the subject property.

Defendant, however, argues that the documents on which plaintiffs relied, the 1977 water rights certificate and the "area to be irrigated" map, do not reasonably represent that an 1892 four-acre water right was appurtenant to the property. We disagree. Although the "area to be irrigated" map was of poor quality, plaintiffs visited the property and noticed a correlation between the certificate, the map, the contour of the property, and irrigation equipment on the property, which then led them reasonably to conclude that the property had a four-acre water right.

Plaintiffs have established that both a mutual mistake of fact and an innocent misrepresentation of fact entitle them to rescission of the deed of sale.

Affirmed.