Argued September 30, 1963, affirmed February 13, petition for
rehearing denied March 10, 1964

# ADAMSON ET AL *v.* LANG, and HYDE

389 P. 2d 39

*Lamar Tooze,* Portland, argued the cause for appellant. On the briefs were Tooze, Powers, Kerr, Tooze & Morrell, Portland.

*Eric R. Haessler,* Portland, and *David W. Harper,* Portland, argued the cause for respondents. With them on the brief were Robert Neil Gygi, and Keane, Haessler, Bauman & Harper, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

O'CONNELL, J.

This action was brought by 87 persons as plaintiffs, to recover amounts paid by each of them for the purchase of shares of stock in Ore-Mont Oil Corporation. They also prayed for interest, attorney fees, and costs. Defendant Lang, who made no defense to this action, was the promoter, organizer, and executive officer of the corporation. It is alleged that Hyde, hereafter referred to as defendant, participated with Lang in the sale of the corporation's stock in violation of the provisions of Chapter 59, Oregon Revised Statutes.

The corporation was formed to finance drilling for oil on Montana land owned by Lang. The Oregon Corporation Commissioner issued a certificate of approval permitting the sale of 247,497 shares of the corporation's stock to the public. All funds from the sale of stock were to be placed in escrow until a total of $25,000 in sale proceeds had been deposited. On

failure to deposit that amount by October 1, 1956, all monies deposited were to be returned to the subscribers. Funds accumulated in the escrow account were to be used only to finance exploratory drilling for oil.

On September 26, 1956, Lang had no further prospects of obtaining the additional $16,150 needed to fulfill the escrow requirements. On or about that date an agreement was entered into between defendant and Lang by the terms of which defendant agreed to loan $15,000 to Lang.

Lang agreed to repay the defendant $3,000 immediately after the escrow requirements were satisfied and the remaining $12,000 within 30 days from the date of the agreement. Defendant's daughter was granted a 5% royalty on oil and gas production on land owned by Lang. Defendant received an option for one year (later extended to five years) to purchase 10,000 shares of the corporation's stock at $1.00 per share. As security for the loan Lang and his wife gave defendant a mortgage on certain residential property in Portland and assigned to defendant their stock in the corporation and approximately 13,000 shares of the stock they were to purchase with the proceeds of the loan.

Lang's testimony as to the understanding of the parties with respect to the source of funds for repayment of the loan was conflicting. Initially he testified that he had no recollection of a specific understanding as to the source of the $3,000 to be repaid immediately after the escrow was released. Later, on redirect examination, when asked "had Dr. Hyde told you that immediately upon the escrow funds being released $3,000 of them were to be turned to him as a partial repayment?" Lang responded affirmatively.

The agreement also provided that $2,250 was to be paid to Kindley, a friend of defendant's, as a commission for bringing the parties together. Lang testified that it was the intention of the parties that the commission was to be paid from the funds held in escrow. Lang and his wife signed the agreements individually and as empowered officers of the corporation.

Lang then acquired $1,150 by selling his only remaining unencumbered assets, signed a subscription agreement for the remaining 16,150 shares and deposited in the bank the $16,150 necessary to complete the escrow requirements of the corporation commissioner's certificate.

On October 4, 1956 the funds in escrow were released for use by the corporation. Lang withdrew $6,000 from the corporation account and deposited it in his own account and issued his personal checks to defendant for $3,000 and to Kindley for $2,250. On October 26, 1956, Lang withdrew an additional $12,000 from the corporation account and issued a personal check to the defendant to repay the remainder of the loan.

At the time of the trial the corporation had no assets and was subsequently dissolved by proclamation of the Governor.

Plaintiffs rely upon ORS 59.250 as a basis for recovery of the amount paid for securities. ORS 59.250 provides as follows:

"(1) Every sale made in violation of any of the provisions of the Oregon Securities Law shall be void; and the person, issuer or dealer making such sale and every director, officer or agent of the seller, if such director, officer or agent with knowledge of the violation personally participated

or aided in any way in making it, shall be jointly and severally liable to the purchaser * * * for the full amount paid by the purchaser, with interest, together with all taxable court costs and reasonable attorney's fees. * * *"

Defendant contends that ORS 59.250 is not applicable to him because he was not a "person, issuer or dealer" making an illegal sale, nor a "director, officer or agent of the seller" who "participated or aided in any way in making it." He further contends that even assuming he could be brought within the statute, the evidence is not sufficient to show that he took part in a violation of the Blue Sky Law.

It is true that defendant did not directly make a sale of the Ore-Mont Oil Corporation securities. However, the evidence would support a verdict based upon his participation in a scheme which was designed to make it possible for Lang to sell Ore-Mont Oil Corporation stock. The stock could not be sold until the required amount was paid into escrow. Upon satisfying this condition of the escrow, the stock subscription agreements and money deposited for them could then be released and the stock subscribed for as well as additional stock could then be sold. Accepting the evidence most favorable to plaintiffs, the loan made by defendant for the purpose of lifting the sale restriction imposed by the corporation commissioner constituted a "participation" or an "aiding and abetting" in the sale of the stock.

If ORS 59.250 were construed strictly defendant would not fall within the class of persons subjected to the liability created by the statute. Defendant was not strictly a "person, issuer or dealer" making a sale of the securities. He "participated" or "aided" in making the sale. But these terms are used only with

reference to a person who is a "director, officer or agent of the seller," which admittedly defendant is not. By making provision for liability on the part of directors, officers, or agents participating or aiding in the making of a sale, did the legislature intend to excuse from the statutory liability persons other than directors, officers or agents who, nevertheless, participated or aided in making the sale?

The trial court held that the Blue Sky Law is to be liberally construed to afford the greatest possible protection to the public. Guided by this standard of construction the court held that defendant was within the class of persons covered by ORS 59.250. We concur in the trial court's construction of the statute. It is not a distortion of the language of the statute to construe the term "person * * * making such sale" to include a person aiding another in making the sale.

*Mosley v. Unruh,* 150 Kan 469, 95 P2d 537, 540 (1939) supports our conclusion. The Kansas statute construed by the court was essentially the same as ours. The defendant Goering permitted himself to be made a dummy director in pursuance of an unlawful scheme to sell securities. In holding that the statute applied to Goering even though he did no more than aid the actual sellers in making the sale, the court said:

"* * * One of the contentions of appellee is that since it was not charged or shown that Goering in any way negotiated or took part directly in the sale of the stock, recovery could not be had against him under section 17-1240 unless there was evidence to show that he had participated or aided in making the sale as a 'director, officer or agent' of the seller; that he was not a director or officer and that there was no evidence

which could be held to establish agency. If, however, there was evidence that the conspiracy had been entered into and that he aided and assisted in consummating it, it makes little difference whether he be considered an agent of Unruh and Siegel. He would become under the law a co-conspirator and principal, and under the well-established doctrine that an act of one of the conspirators is an act of all he would become in effect a seller within the meaning of the statute. To give the statute a narrower interpretation would open an easy path to its nullification."

We believe that ORS 59.250 is susceptible to a similar construction.

■ Defendant argues that there is no evidence to show that he participated or aided in any way in making the sale of securities. The evidence was conflicting but the jury could have reasonably found that defendant loaned the money to Lang for the purpose of circumventing the conditions imposed by the corporation commission upon Lang with respect to the release of the funds and the subscription agreements from escrow.

We find nothing in the other assignments of error requiring comment.

The judgment is affirmed.