**Robert P. McCARNEY, Plaintiff and Appellant,**

v.

**Kent JOHANNESON and Richard D. Olson, Defendants and Appellees.**

Civ. No. 10062.

Supreme Court of North Dakota.

Jan. 25, 1982.

Wheeler, Wolf, Peterson, Schmitz, Mc-Donald & Johnson and Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for plaintiff and appellant; argued by Orell D. Schmitz, Bismarck.

Thomas F. Kelsch, of Kelsch Law Firm, Bismarck, for defendants and appellees.

VANDE WALLE, Justice.

Robert P. McCarney appealed from a summary judgment dismissing his action against Kent Johanneson and Richard D. Olson. We reverse.

McCarney seeks to recover $75,000, the price of the securities he purchased from Johanneson and Olson, plus costs and attorney fees. McCarney's claim is that the sale to him was in violation of North Dakota's Securities Act and he therefore may elect to avoid the sale.

The events which resulted in the sale to McCarney began when Johanneson was contacted about investing in the stock of a Nevada corporation, Emergency Medical Information, Inc. (EMI). Johanneson informed Olson of the opportunity. McCarney learned of the stock sale while discussing other business with Johanneson and Olson. The three of them agreed to purchase 666,000 shares of EMI for $150,000. McCarney agreed to purchase 333,000 shares and Johanneson and Olson the remainder. Before the shares were actually received, McCarney's daughter, Sharon Spaedy, purchased 166,500 shares out of the total

McCarney was to receive. McCarney took a promissory note from his daughter for the price of the shares she was to receive and wrote a check for $75,000 to the "Little Knife Company" for his shares and his daughter's shares of the stock. The Little Knife Company is an informal partnership between Johanneson and Olson used to facilitate buying and selling mineral rights. McCarney's $75,000 was forwarded to EMI through the Little Knife Company. The remaining $75,000 for Johanneson's and Olson's shares was to be paid six months later, apparently under an installment agreement Olson and Johanneson had with EMI. Initially three stock certificates, representing the shares each purchased, were sent to Johanneson and Olson by EMI, one each for McCarney, Johanneson, and Olson. Johanneson and Olson apparently contacted EMI and requested that the number of shares represented by the certificate to McCarney should be divided between McCarney and his daughter and that new certificates should be issued. Olson also wrote to McCarney advising him that McCarney's and Spaedy's shares of stock were being held in trust for them and that the shares would be divided equally between them through separate certificates.

The investment in EMI is now less attractive due to the investigation of EMI by the State of California. Although McCarney is suing in his name only, he seeks to recover the $75,000 he paid for his stock and for his daughter's stock. The basis for his claim is Section 10–04–17, N.D.C.C., which gives a purchaser an absolute right to avoid any sale made in violation of the Securities Act.

McCarney asserts that Johanneson and Olson violated Section 10–04–04, N.D.C.C., which makes it unlawful to sell or offer for sale any security not registered or exempt from registration. It is undisputed that neither the stock nor the sellers were registered with the Securities Commissioner. McCarney contends that these securities are not exempt from registration.

Johanneson and Olson claim the exemption provided in Section 10–04–06(9), N.D.C.C., and in Section 73–02–03–01(7)(a), N.D.A.C.[1] The statute and the rule exempt, in certain transactions, both the seller and the security from the registration requirement. The conditions under which the exemption applies are: the number of offerees in this State during a consecutive 12-month period is three or fewer; the seller reasonably believes that all the buyers in this State are purchasing for investment; and no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in this State. The exemp-

---

1. Exempt transactions under Section 10–04–06, N.D.C.C., include:

"9. Any transaction pursuant to an offer directed by the offeror to not more than ten persons (other than those designated in subsection 5) in this state during any period of twelve consecutive months, whether or not the offeror or any of the offerees is then present in this state, if all of the following conditions are met:

"a. The seller reasonably believes that all the buyers in this state (other than those designated in subsection 5) are purchasing for investment.

"b. No commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in this state (other than those designated in subsection 5).

"c. The offeror applies for and obtains the written approval of the commissioner prior to making any offers in this state and pays a filing fee of fifty dollars, which fee must accompany the application for approval.

"Provided, however, that the commissioner may by rule or order, as to any security or transaction or any type of security or transaction, withdraw or further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in subdivisions a, b, and c with or without the substitution of a limitation on remuneration."

The Securities Commissioner has promulgated the following rule, Section 73–02–03–01(7)(a), N.D.A.C.:

"Except as otherwise provided under subdivisions c and d, if the number of offerees *in connection with all offers of securities, whether of the same or of a different issue*, in this state during a consecutive twelve-month period is three or fewer and if the conditions in subdivisions a and b of subsection 9 of North Dakota Century Code section 10–04–06 are met, the application, approval, filing fee, and reporting requirements prescribed under this section are waived." [Italicized portion added July 1981.]

tion is further limited; however, those limitations do not apply here.

The trial court granted Johanneson and Olson's motion for summary judgment because it concluded that the requirements for the exemption were met. The only issue is whether or not the trial court erred in granting summary judgment. We decide that summary judgment should not have been granted because a genuine issue of material fact exists as to whether or not one of the requirements for exemption was met.

The standards for summary judgment are contained in Rule 56(c), N.D.R.Civ.P. This court has often discussed the application of the rule. See *Sheets v. Letnes, Marshall & Fiedler, Ltd.*, 311 N.W.2d 175, 180 (N.D. 1981); *Benson County Coop. Credit Union v. Central Livestock*, 300 N.W.2d 236, 239 (N.D.1980); and *Schoonover v. Morton County*, 267 N.W.2d 819, 821–822 (N.D. 1978). Applicable here is what we said in *Farmers Elevator Company v. David*, 234 N.W.2d 26, 31 (N.D.1975): "When the facts may not be in dispute but the inferences reasonably deducible therefrom may be conflicting, summary judgment is inappropriate."

McCarney claims that the trial court erred in concluding that the first requirement for the exemption was met, i.e., that the number of offerees was three or fewer. We do not agree. We believe that the trial court correctly concluded that as a matter of law there were three or fewer offerees. Our conclusion is arrived at by applying the law to the undisputed facts.

Section 10–04–17, N.D.C.C., provides that "Every sale or contract for sale made in violation of any of the provisions of this chapter, or of any rule or order issued by the commissioner ... shall be voidable at the election of the purchaser." McCarney clearly is a purchaser. To avoid the sale he must show that the sale was made in violation of a statute or rule.

■ Section 10–04–17 also provides that "[t]he person making such sale or contract

for sale, and every director, officer, salesman, or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser ..." Therefore, a purchaser, after he has proved that a sale has been made in violation of a statute or rule, may hold liable those persons who made the sale or those who participated in making the sale. *Weidner v. Engelhardt*, 176 N.W.2d 509, 515 (N.D.1970). Johanneson and Olson admitted for the purpose of the motion for summary judgment that they were sellers.

McCarney seeks to prove that the exemption requirements were not met, by arguing that he and Spaedy *and* Johanneson and Olson must be counted as buyers. McCarney contends that because there were four buyers there were also four offerees and the exemption does not apply. McCarney cites three cases for the proposition that one person can be both a seller and a buyer, and that any person in the selling chain who assisted the seller in selling the security is liable as the seller even though also a buyer. See *Smith v. Smith*, 424 S.W.2d 244 (Tex.Civ.App.1968); *Adamson v. Lang*, 236 Or. 511, 389 P.2d 39 (1964); and *Brown v. Cole*, 291 S.W.2d 704 (Tex.Civ.App.1956). This result is similar to the provisions of Section 10–04–17 which specify that persons who made a sale or those who participated in making the sale could be held liable.

■ We must examine the statute and the status of all the parties vis-a-vis EMI and Johanneson and Olson to determine whether or not there were three or fewer offerees as a matter of law.

Reading Section 10–04–06(9), N.D.C.C., and Section 73–02–03–01(7)(a), N.D.A.C., together, we paraphrase their effect: Any transaction is exempt if it is pursuant to an offer directed by the offeror to three or fewer offerees in this State during a consecutive 12-month period, and if the conditions in subdivisions a and b of Section 10–04–06(9) are met.[2] Our statute exempts

2. The rule provided by Section 73–02–03–01(7)(a) was amended after the transaction involved in this case. We therefore have interpreted the rule as it existed before the July 1981 amendment.

transactions based, partially, upon the number of offerees, not the number of buyers. Therefore, we must look at the parties in terms of offerors and offerees and not as sellers and buyers. As this case demonstrates, buyers and offerees are not automatically synonymous.

EMI made its offer to Johanneson and Olson. Johanneson and Olson made an offer to McCarney and, we assume without so deciding, to Spaedy. In order for McCarney's argument to succeed in this situation, Johanneson and Olson would have to be their own offerees; then there would be four offerees as to one offeror.

The sale to McCarney complies with the exemption, for the purposes of the number of offerees, as to Johanneson and Olson because as offerors they directed the offer to purchase EMI stock to one and, at most, two offerees, McCarney and Spaedy.

We agree with the trial court that the second requirement for the exemption was met, i.e., that the seller reasonably believes that all the buyers are purchasing for investment. McCarney admitted as much in his deposition.

■ We believe that the trial court should have denied summary judgment because conflicting inferences could be reached from the undisputed facts surrounding the third requirement, i.e., that no commission or remuneration had been received by Johanneson and Olson. It is undisputed that Johanneson and Olson did not receive a check or cash directly from McCarney which would constitute a commission. It is also undisputed, however, that Johanneson and Olson received their stock certificates at the same time McCarney received his, even though they had not planned to risk their own money for another six months. At that point only McCarney's money had been sent to EMI. The possible effect was that Johanneson and Olson received all of their stock without having to make any payment for it. Johanneson and Olson, however, at least were able to use McCarney's money and it possibly allowed them to receive their stock before they were required to pay for their own stock. Presumably, the price of Johanneson's and Olson's combined stock purchase, $75,000, may have remained in an interest-bearing account or used by Johanneson and Olson for other purposes while McCarney's $75,000 provided EMI with the consideration to send Johanneson's and Olson's stock to them without prior payment. It is possible that EMI was unaware that the $75,000 it received was from McCarney because McCarney paid Little Knife Company and Little Knife paid EMI. We believe that an inference could reasonably be deduced from the undisputed fact that Johanneson and Olson received remuneration due to the manner in which McCarney's money was used to obtain the stock for all of them.

We determine that the trial court erred in concluding as a matter of law that no remuneration was involved in the transaction and that the transaction was exempt from the Securities Act. Conflicting inferences could reasonably be drawn from the undisputed facts as to whether or not Johanneson and Olson did receive remuneration for the transaction.

We reverse the summary judgment and remand the case for a trial in the court below on the issue of remuneration to Johanneson and Olson.

ERICKSTAD, C. J., PEDERSON and SAND, JJ., and BERT L. WILSON, District Judge, concur.

WILSON, District Judge, sitting in place of PAULSON, J., disqualified.