Argued and submitted May 1, decision of the Court of Appeals reversed, and case remanded for further proceedings to the Court of Appeals December 29, 1995, reconsideration allowed July 23, 1996
See later issue Oregon Reports

## GOODYEAR TIRE & RUBBER COMPANY,
an Ohio corporation,
*Respondent on Review,*

*v.*

## TUALATIN TIRE & AUTO, INC.,
an Oregon corporation,
*Petitioner on Review.*

(CC C89-0099CV; CA A73536; SC S41806)

908 P2d 300

Mark E. Griffin, of Griffin & McCandlish, Portland, and Kim E. Hoyt, of Ferder, Brandt & Casebeer, Salem, argued the cause for petitioner on review. Mark E. Griffin filed the petition.

William H. Walters, of Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause for respondent on review. With him on the brief was Linda L. Marshall.

Gary M. Berne and David C. Rees, of Stoll Stoll Berne Lokting & Shlachter P.C., Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

GILLETTE, J.

## GILLETTE, J.

■ This is a civil case involving a number of disputes between a franchisor, Goodyear Tire & Rubber Company (Goodyear), and a franchisee, Tualatin Tire & Auto, Inc. (Tualatin). We allowed review to determine two important issues of civil procedure. The first is whether the "we can't tell" rule, described by this court in *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 356-61, 788 P2d 428 (1990), and *Pavlik v. Albertson's, Inc.*, 253 Or 370, 454 P2d 852 (1969),[1] may, consistent with ORCP 63, be applied to require that there be a new trial in a case in which there was no motion for a new trial in the trial court. The Court of Appeals held that the rule could be applied, even in the absence of a motion for a new trial. *Goodyear Tire & Rubber Co. v. Tualatin Tire and Auto*, 129 Or App 206, 213, 879 P2d 193 (1994). The second issue is whether a right to trial by jury exists in actions filed under the remedies provision of the Oregon Franchise Act (OFA). ORS 650.020. The Court of Appeals held that there is no right to trial by jury under that statute. *Id.* at 216. For the reasons that follow, we reverse both those holdings.

A detailed recital of the facts surrounding each of the numerous claims between Goodyear and Tualatin is not necessary to our review. It suffices to say that the litigation below was the result of a franchise relationship gone sour. Goodyear brought an action against Tualatin to evict Tualatin from Goodyear's franchise store and to recover sums due under the lease and on an open account. Tualatin counterclaimed for breach of contract, common law fraud, and violations of the California Franchise Investment Law (CFIL),[2] the Oregon Franchise Act (OFA),[3] and the Oregon Unfair Trade Practices Act (UTPA).[4] Some of the claims were

---

[1] The "we can't tell" rule, put simply, is a rule of judicial necessity requiring that an appellate court remand a case for a new trial whenever: "(1) more than one allegation * * * is submitted to the jury; (2) one or more of, but not all, the allegations are unsupported by the evidence; and (3) it cannot be determined upon which allegation the jury based its verdict." *Whinston*, 309 Or at 357. *See also Pavlik*, 253 Or at 375 (applying similar rule).

[2] Cal Corporations Code §§ 31201, 31301 (West 1977).

[3] ORS 650.005 to 650.085.

[4] ORS 646.605 to 646.656.

resolved on motions for summary judgment or directed verdict. The remaining claims — including Goodyear's claims for common law fraud, CFIL violations, and OFA violations — were tried to a jury.

The core theory of Tualatin's case was that Goodyear had engaged in 13 instances of misrepresentation, which formed the bases for Tualatin's common law fraud claim *and* its claims under the CFIL and OFA. At the close of all the evidence, Goodyear moved to withdraw from the jury's consideration six of the 13 allegations, arguing that Tualatin had failed to introduce sufficient evidence to support them. The trial court rejected that motion and sent all 13 allegations of misrepresentation to the jury. Goodyear also moved to require the *court* to determine liability under the OFA claim. It argued that, in the absence of an express grant by the legislature, Tualatin did not have the right to a jury trial on that claim and that the only remedy permitted by the OFA was an equitable remedy. The court also denied that motion.

After deliberation, the jury returned verdicts for both parties. Pertinent to the questions on review, the jury returned general verdicts for Tualatin on the CFIL claim ($74,000), the OFA claim ($112,000), and the common law fraud claim ($260,000). Goodyear then moved to compel Tualatin to elect a remedy. The trial court granted the motion, and Tualatin elected to recover under the common law fraud claim.[5] The trial court also awarded Tualatin attorney fees and costs pursuant to the remedies provision of the OFA. ORS 650.020(3). On entry of the judgment, Goodyear moved for a judgment notwithstanding the verdict, again asserting, *inter alia*, that the six alleged instances of misrepresentation should not have been submitted to the jury. The court also denied that motion.

On appeal to the Court of Appeals, Goodyear asserted 10 assignments of error. In its first six assignments,

---

[5] Tualatin assigned the trial court's order to elect as error in the Court of Appeals. Due to that court's disposition of Goodyear's assignments of error, and its remand of the claims for a new trial, it did not reach Tualatin's assignment. Tualatin did not raise the issue whether an election was necessary in its petition for review, and we do not address it.

Goodyear argued that the trial court erred in not withdrawing each of the six "unsupported allegations" of misrepresentation from the jury's consideration. The Court of Appeals determined that the record failed as a matter of law to support four of the six allegations.[6] Because it could not tell whether the jury had relied on the deficient allegations in rendering the verdicts below, the Court of Appeals remanded each claim for a new trial. *Goodyear Tire & Rubber Co.*, 129 Or App at 213-14. In its ninth assignment, Goodyear argued that the trial court had erred in submitting the OFA claim to the jury. The Court of Appeals held that, because the remedy provided under the OFA was "historically equitable in nature," Tualatin's OFA claim should be tried to the court on remand. *Id.* at 216. Goodyear's seventh, eighth, and tenth assignments were resolved by the Court of Appeals and are not before this court on review.[7] We now address each of the two issues on review.

## I. IS GOODYEAR ENTITLED TO A NEW TRIAL?

■ The Court of Appeals relied on a longstanding practice of this court, dubbed the "we can't tell" rule in *Whinston*. Tualatin does not disagree with the rule but argues that, under ORCP 63 and 64,[8] the court may not grant a new trial

---

[6] At this level, Tualatin does not dispute the ruling of the Court of Appeals that there was no evidence to support four of the 13 allegations of misrepresentation. We therefore treat that issue as having been resolved against Tualatin.

[7] Goodyear argued in its tenth assignment that the trial court erred in granting attorney fees under the OFA after Tualatin elected a remedy under its common law fraud theory. Because the Court of Appeals remanded all the claims for a new trial, the court did not rule on Goodyear's tenth assignment of error. Without formally seeking review on its tenth assignment of error, Goodyear requested, in its brief and at oral argument, that this court decide that issue. We decline to do so.

[8] ORCP 63 provides in part:

"A. When a motion for a directed verdict, made at the close of all the evidence, which should have been granted has been refused and a verdict is rendered against the applicant, the court may, on motion, render a judgment notwithstanding the verdict, or set aside any judgment which may have been entered and render another judgment, as the case may require.

"* * * * *

"C. A motion in the alternative for a new trial may be joined with a motion for judgment notwithstanding the verdict, *and unless so joined shall, in the event that a motion for judgment notwithstanding the verdict is filed, be deemed waived.* When both motions are filed, the motion for judgment notwithstanding the verdict shall have precedence over the motion for a new

— the remedy ordered by the Court of Appeals — unless the party seeking a new trial also *moves* for that relief in the trial court. The record is clear that Goodyear did not move for a new trial after judgment was entered in the trial court; it moved only for judgment notwithstanding the verdict (*j.n.o.v.*). For reasons that follow, we agree with Tualatin.

The pivotal rule relating to this issue is ORCP 63 C, which provides:

"A motion in the alternative for a new trial may be joined with a motion for judgment notwithstanding the verdict, *and unless so joined shall, in the event that a motion for judgment notwithstanding the verdict is filed, be deemed waived.*"

(Emphasis added.)

A party that has lost a jury trial and believes that the trial court may have committed one or more reversible errors with respect to the conduct of that trial has a variety of remedies available. If the party believes that the trial court has made a legal error to which the party timely objected, without which the other side would not be entitled to prevail at all, then the party may move for a judgment

---

trial, and if granted the court shall, nevertheless, rule on the motion for a new trial and assign such reasons therefor as would apply had the motion for judgment notwithstanding the verdict been denied, and shall make and file an order in accordance with said ruling." (Emphasis added.)

ORCP 64 provides in part:

"B. A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury *on the motion of the party aggrieved* for any of the following causes materially affecting the substantial rights of such party:

"* * * * *

"B(5) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

"B(6) Error in law occurring at the trial and objected to or excepted to by the party making the application.

"* * * * *

"D. In all cases of motion for a new trial, the grounds thereof shall be plainly specified, and no cause of new trial not so stated shall be considered or regarded by the court. * * *.

"* * * * *

"G. *If a new trial is granted by the court on its own initiative*, the order shall so state and shall be made within 30 days after the entry of judgment. Such order shall contain a statement setting forth fully the grounds upon which the order was made, which statement shall be a part of the record in the case." (Emphasis added.)

notwithstanding the verdict. If the trial court grants the motion, judgment will be entered for the party. If the trial court denies the motion, the moving party has the same clear issue for appeal.

But it may be that a party either is uncertain of its entitlement to a clear win, or asserts legal errors that, even if well taken, would justify only a new trial, rather than a judgment in its favor. In such circumstances, it may be prudent to join a motion for a new trial with a motion for a judgment notwithstanding the verdict. But that choice does not follow automatically. A party may, for example, be unwilling to undergo the expense of a retrial, even if it would be entitled to one. Under such circumstances, it could well instruct its counsel to place all its eggs in the single basket of a motion for a *j.n.o.v.*

The wording of ORCP 63 C is a recognition of the foregoing range of practical possibilities, and it would be difficult for a rule to be much clearer. The party that has lost the jury trial may join a motion for a *j.n.o.v.* with a motion for a new trial, but the rule imposes a price on the choice to file only the motion for a *j.n.o.v.* — the alternate remedy of a new trial no longer is available. We would nullify the policy choice represented by ORCP 63 C were we to permit the court-made "we can't tell" rule to override it. The reason for the "we can't tell" rule — judicial necessity — is inapplicable if the party that invokes that rule has waived the right to a new trial. Having chosen to hazard its fortune solely on its motion for a *j.n.o.v.*, Goodyear waived any claim to a new trial. ORCP 63 C.

■ The only other argument that might be made for the disposition made by the Court of Appeals would arise under ORS 19.130(1), which states that a reviewing court in a civil appeal "may, if necessary and proper, order a new trial." However, such an order would not be "proper," as the statute uses that term, where a party has waived its right to such a remedy under ORCP 63 C. The contrary conclusion of the Court of Appeals was error.[9]

---

[9] Goodyear argues that this court twice has applied the "we can't tell" rule in cases in which there had been only a motion for a *j.n.o.v.*, with no concomitant motion for a new trial. We disagree. In *Combs v. Loebner*, 315 Or 444, 451 n 2, 846 P2d 401 (1993), this court cited the rule only by way of illustrating that the rule

At first blush, it might appear that our disposition of this first issue also necessarily disposes of the case. As noted, Tualatin had a jury verdict in its favor on three different claims. Tualatin then was required after trial to elect the theory under which it would recover. It chose the common law theory, which gave it the largest recovery. Nonetheless, Goodyear's appeal to the Court of Appeals necessarily challenged the verdict on all three claims; to do less would have involved conceding Tualatin's right to recover the amount assessed by the jury as to any unchallenged claim. Because all the claims were based on the same factual allegations, the Court of Appeals ordered a new trial on all three. And, because it had ordered a new trial as to all three, that court was required to rule whether the retrial of the OFA claim should be to the court or to a jury. As noted, it held that the issue should have been tried to the court.

Our ruling on the "we can't tell" issue changes the posture of the entire case. Goodyear is not entitled to a new trial with respect to the common law claim. Because the Court of Appeals' bases for reversing the verdicts on the other two claims shared the same rationale as its reversal of the common law claim, its reversal of the other two claims also was erroneous. That fact would be of little more than academic interest by itself, in light of Tualatin's election of a remedy. But the Court of Appeals' disposition of this case permitted it to avoid answering assignments of error by both parties that it now will be required to address by our holding here.

Among the questions not answered by the Court of Appeals was the issue of the amount of attorney fees, if any, to which Tualatin may be entitled under the OFA. Resolution of that question would be premature if — as the Court of Appeals ruled — it was error to try that issue to a jury. Thus, the second issue raised on this petition for review, *viz.*, the

---

was not applicable to the case before it, because only one theory had been presented to the jury. The case of *U.S. National Bank v. Boge*, 311 Or 550, 814 P2d 1082 (1991), arguably is closer to the mark, because this court there applied the "we can't tell rule" to require a new trial, without specifically indicating in the opinion whether the prevailing party there had complied with ORCP 63 C. *Id.* at 568-69. (The only motion filed by the prevailing party that is mentioned in the opinion is a motion for a *j.n.o.v.*) Nonetheless, that case cannot be said to stand for the proposition that ORCP 63 C does *not* apply to such circumstances; the issue simply never arose.

right to a jury trial under the OFA, remains alive. We turn to it now.

## II. IS A JURY TRIAL AVAILABLE UNDER THE OFA?

Resolution of this issue requires two steps. First, we determine whether the legislature intended by the Oregon Franchise Act to provide a trial by jury. Second, and only if we determine that the legislature did not intend to provide a jury trial, we determine whether a jury trial nonetheless is required by Article I, section 17, or Article VII (Amended), section 3, of the Oregon Constitution. *See e.g., Zockert v. Fanning,* 310 Or 514, 520, 800 P2d 773 (1990) (when a statute resolves the issue in the case, this court will not reach a constitutional claim). Unlike the Court of Appeals, we hold that the legislature intended to provide a trial by jury under the Oregon Franchise Act. We therefore do not reach the constitutional question.

When interpreting a statute, this court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). The first level of analysis is to examine the text and context of the statute. The text is the principal evidence of the legislature's intention. The context of the statute includes other provisions of the same statute and other related statutes. If the legislature's intent is unclear from the text and context of the statute, the court proceeds to the next level of analysis, which is to consider the legislative history of the statute. *Id.* 317 Or at 611-12.

What has become known as The Oregon Franchise Act,[10] ORS 650.005 through 650.085, regulates the sale of franchises in Oregon. ORS 650.020 delineates a private right of action for specific deceptive practices. It provides in part:

"(1)  Any person who sells a franchise is liable as provided in subsection (3) of this section to the franchisee if the seller:

"(a)  Employs any device, scheme or artifice to defraud; or

"(b)  Makes any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

---

[10] The statute does not include a "short title."

"(2)   It shall be an affirmative defense to any action for legal or equitable remedies brought under subsection (1) of this section if the franchisee knew of the untruth or omission.

"(3)   The franchisee may recover any amounts to which the franchisee would be entitled upon an action for a rescission, reasonable attorney fees at trial and on appeal and court costs."

The text of ORS 650.020 does not expressly grant a right to trial by jury. This court has held that such express authority is not necessary, however, as long as a legislative intent is clear. *See Clarkston v. Bridge*, 273 Or 68, 77-79, 539 P2d 1094 (1975) (legislative intent with respect to jury trial for URESA claims determined by resort to parallel, but more specific, statutes granting the right). *Cf. Cornelison v. Seabold*, 254 Or 401, 404, 460 P2d 1009 (1969) (the statutory wording, "shall be determined by the court as a matter of law," indicated a legislative intent that the issues be tried without a jury).

Because some background is necessary to a proper understanding of the text of ORS 650.020, we address, briefly, the historical context of the statute. ORS 650.020 was originally enacted in 1973, before Oregon's adoption of the Oregon Rules of Civil Procedure (ORCP). Or Laws 1973, ch 509, § 4. At that time, Oregon maintained the distinctions between "suits in equity" and "actions at law." One of those distinctions was the common law rule that "suits in equity" were tried to the court, while "actions at law" were triable to a jury. *See Sealey v. Hicks*, 309 Or 387, 396 n 11, 788 P2d 435 (1990), *cert den Sealy v. Toyota Motor Corp.*, 498 US 819, 111 S Ct 65, 112 L Ed 2d 39 (1990) ("By 'civil action' we mean what was once called an action at law. There is no right to a jury trial in equity."). The legislature's use of the terms, "suits" and "actions," became an important indication of legislative intent with respect to procedure. *See Buell v. Jefferson County Court*, 175 Or 402, 408, 152 P2d 578 (1944) (illustrating proposition).

On the adoption of the ORCP in 1979, the legislature abolished many procedural distinctions between "suits" and "actions." ORCP 2 now provides:

> "There shall be one form of action known as a civil action. All procedural distinctions between actions at law and suits in equity are hereby abolished, except for those distinctions specifically provided for by these rules, by statute, or by the Constitution of this state."

Most references in the statutes to "suits" and "actions" also were eliminated as a matter of "housekeeping." A staff comment by the Council on Court Procedures explained the process:

> "[Rule 2] abolishes the last vestiges of procedural difference based upon a case being historically legal or equitable. Right to jury trial is not affected as it is a constitutional right. Different procedures are, of course, followed in cases tried to a jury and to a court. In the rules, where a 'law — equity' or an 'actions — suit' distinction was used to specify procedures appropriate to a jury trial or non-jury trial, this has been changed to a direct reference to cases tried to a court or a jury. Terminology such as 'actions and suits' and 'judgments and decrees' has been eliminated."

Oregon Law Institute, 1980 Oregon Civil Procedure Rules, 5. *See also* Or Laws 1979, ch 284 (enacting changes). With that background in mind, we turn to the text of the statute in question.

Like many other statutes, ORS 650.020 (1973) was amended in 1979 to eliminate references to law and equity. Sections (2) and (3) of ORS 650.020 (1973) provided:

> "(2)  It shall be an affirmative defense to any *action or suit* brought under subsection (1) of this section if the franchisee knew of the untruth or omission.

> "(3)  The franchisee may recover any *amounts to which he would be entitled upon a suit in equity for a rescission,* reasonable attorney fees at trial and on appeal and court costs."

(Emphasis added.)

Although use of the terms "actions at law" and "suits in equity" generally was deleted in 1979, the legislature's use of those terms of art indicates the legislature's original intent with respect to a right to trial by jury under the statute. Because the 1979 revisions to ORS 650.020 do not purport to change the legislature's original intent with

respect to jury trials, we examine the original wording to gain any insight that it may provide.

From its wording, section (3) of ORS 650.020 (1973) might be construed to limit actions under the statute to "suit[s] in equity for a rescission" — a type of proceeding for which a jury trial was not available. On the other hand, that section might be construed as a limitation on damages. Under the latter interpretation, a defrauded franchisee could bring an action *at law*, but would only be entitled to recover *"amounts to which [the franchisee] would be entitled* upon a suit in equity for a rescission * * *." ORS 650.020(3) (1973) (emphasis added).

The latter interpretation is consistent with section (2) of ORS 650.020. That section provides an affirmative defense against equitable *or* legal claims made under the OFA. If the legislature had intended to permit only equitable claims for rescission, then the provision of an affirmative defense to claims *at law* would not have been necessary.

Given the two foregoing interpretations, which are reasonable but antithetical, it is not clear, from the text and context of ORS 650.020, whether the legislature intended to provide the right to a trial by jury for claims under the OFA. It is necessary therefore to consult the legislative history of that statute for an indication of legislative intent.

The OFA was introduced to the legislature on behalf of the Department of Commerce, Corporation Division, as Senate Bill 329. The small amount of discussion that occurred with respect to that bill took place, for the most part, in the Senate Committee on Consumer and Business Affairs. There, Frank Healy, the Corporation Commissioner, presented a written summary of the measure. That summary stated in part:

> "This bill closely parallels the disclosure requirements and civil liability sections of the Oregon Securities Law but does not burden franchisors with the registration requirements."

Testimony, Senate Committee on Consumer and Business Affairs, SB 329, February 27, 1973, (Exhibit 1, Appendix D) p 1. Healy's oral testimony was to the same effect. It began:

"[T]he purpose of this bill is to adapt the securities laws [ORS 59.115] to the sale of franchisees; We think there is some analogies between the sale of franchises [and the sale of securities]."

Committee on Consumer and Business Affairs, February 27, 1973, Tape 2, side 1, at 496.

The Senate floor debate provided little more in terms of legislative intent. Senator Heard carried the bill:

"Mr. President, in the past few years there has been a significant growth in the sale of franchises in the state of Oregon. Certain types of sales programs and techniques in the sale of franchises are the subject of real abuse. The purpose of this legislation is not to require the registration of all franchises, as in the sale of stock, [but] rather to require the seller of franchises to make a full disclosure to the purchaser of all the things he should know to make an intelligent business determination. In furtherance of the objectives in this legislation, the corporation commissioner would be entitled to make investigations and, in appropriate instances, seek an injunction to prevent the improper practices of the franchisor and its salesmen. *This bill closely parallels the disclosure requirements and civil liability sections of the Oregon Securities Law*. I urge passage of senate bill 329."

(Emphasis added.) Senate Floor Proceedings, June 23, 1973, Tape 28, side 2, at 0127. There was no other debate before the bill was passed unanimously. *Id.* The bill later was approved unanimously in the House, without amendment, and signed by the Governor.

From the legislative history of ORS 650.020, we know that the legislature intended by that statute to extend certain of the protections afforded by Oregon's existing securities laws to the purchase and sale of franchises. ORS 59.005 through 59.445 (formally titled the "Oregon Securities Law" but better known as the "blue sky law") then provided liability for the sale of a security "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading." ORS 59.115(1)(b) (1973). ORS 59.115(2) (1973) provided two possible remedies. The purchaser of securities could recover:

"(a) Upon tender of the security, the consideration paid for the security, and interest from the date of payment at the rate of six percent per annum, or at the rate provided in the security if the security is an interest bearing obligation, less any amount received on the security; or

"(b) If he no longer owns the security, damages in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value at the rate of six per cent per annum from the date of disposition."

Both subsections provide the same *result* as the legislature provided in ORS 650.020(3), *viz.*, "restitution damages."

The legislature's intent to parallel the protections and liabilities in the blue sky laws provide us with an indication as to the legislature's intent with respect to jury trials. The protection afforded by Oregon's securities laws includes the right to a jury trial. *See, e.g., Badger v. Paulson Investment Co., Inc.*, 311 Or 14, 17-18, 803 P2d 1178 (1991) (securities fraud claims tried to jury); *Adams v. American Western Securities*, 265 Or 514, 524-31, 510 P2d 838 (1973) (task on review was to determine whether to reverse an involuntary nonsuit and send the case back to be tried to a jury); *Adamson v. Lang*, 236 Or 511, 517, 389 P2d 39 (1964) (finding evidence to support jury verdict).

## CONCLUSION

Because the legislative history of ORS 650.020 indicates that the legislature intended by that statute to extend the same broad protections and remedies to purchasers of franchises, we conclude that the original wording of ORS 650.020(3) concerning "suits in equity" was not intended to prevent a franchisee from obtaining a trial by jury. It was, instead, intended to limit the amount of damages that could be recovered. The Court of Appeals' ruling to the contrary was error.

The decision of the Court of Appeals is reversed. The judgment for Tualatin on its common law, OFA, and CFIL claims is affirmed. The case is remanded to the Court of Appeals for further proceedings.